[This opinion has been published in *Ohio Official Reports* at 92 Ohio St.3d 35.]

BENNETT, ADMR., APPELLANT, *v.* STANLEY ET AL., APPELLEES.

[Cite as *Bennett v. Stanley*, 2001-Ohio-128.]

*Torts—Negligence—Attractive nuisance—Unused residential swimming pool—Level of duty property owner owes to a child trespasser—Possessor of land subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land, when—Adult who attempts to rescue a child from an attractive nuisance assumes the status of the child and is owed a duty of ordinary care by the property owner.*

(No. 00-108—Submitted October 18, 2000—Decided June 13, 2001.)

APPEAL from the Court of Appeals for Washington County, No. 98CA36.

_____

SYLLABUS OF THE COURT

1. A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or to otherwise protect the children. (Restatement of the Law 2d, Torts [1965], Section 339, adopted.)

2. While the attractive nuisance doctrine is not ordinarily applicable to adults, it may be successfully invoked by an adult seeking damages for his or her own injury if the injury was suffered in an attempt to rescue a child from a danger created by the defendant's negligence.

———————————

**PFEIFER, J.**

{¶ 1} In this case we are called upon to determine what level of duty a property owner owes to a child trespasser. We resolve the question by adopting the attractive nuisance doctrine set forth in Restatement of the Law 2d, Torts (1965), Section 339. We also hold that an adult who attempts to rescue a child from an attractive nuisance assumes the status of the child, and is owed a duty of ordinary care by the property owner.

*Factual and Procedural Background*

{¶ 2} When Rickey G. Bennett, plaintiff-appellant, arrived home in the late afternoon of March 20, 1997, he found his two young daughters crying. The three-year-old, Kyleigh, told him that "Mommy" and Chance, her five-year-old half-brother, were "drowning in the water." Bennett ran next door to his neighbors' house to find mother and son unconscious in the swimming pool. Both died.

{¶ 3} The Bennetts had moved next door to defendants-appellees, Jeffrey and Stacey Stanley, in the fall of 1996. The Stanleys had purchased their home the previous June. At the time of their purchase, the Stanleys' property included a swimming pool that had gone unused for three years. At that time, the pool was enclosed with fencing and a brick wall. After moving in, the Stanleys drained the pool once but thereafter they allowed rainwater to accumulate in the pool to a depth of over six feet. They removed a tarp that had been on the pool and also removed

the fencing that had been around two sides of the pool. The pool became pond-like: it contained tadpoles and frogs, and Mr. Stanley had seen a snake swimming on the surface. The pool contained no ladders, and its sides were slimy with algae.

{¶ 4} Rickey and Cher Bennett were married in 1995. They had two daughters, born in 1993 and 1995. Cher brought her son, Chance Lattea, into the marriage. The Bennetts rented the house next to the Stanleys. The houses were about one hundred feet apart. There was some fencing with an eight-foot gap between the two properties.

{¶ 5} The Stanleys were aware that the Bennetts had moved next door and that they had young children. They had seen the children outside unsupervised. Stacey Stanley had once called Chance onto her property to retrieve a dog. The Stanleys testified, however, that they never had any concern about the children getting into the pool. They did not post any warning or "no trespassing" signs on their property.

{¶ 6} Rickey Bennett testified that he had told his children to stay away from the pool on the Stanleys' property. He also stated that he had never seen the children playing near the pool.

{¶ 7} Kyleigh told her father that she and Chance had been playing at the pool on the afternoon of the tragedy. The sheriff's department concluded that Chance had gone to the pool to look at the frogs and somehow fell into the pool. His mother apparently drowned trying to save him.

{¶ 8} Bennett, in his capacity as Administrator of the Estate of Cher D. Bennett, as Administrator of the Estate of Chance C. Lattea, and as custodial parent of Kyleigh D. Bennett, filed a wrongful death and personal injury suit against the Stanleys. The complaint alleged that appellees had negligently maintained an abandoned swimming pool on their property and that appellees' negligence proximately caused the March 20, 1997 drowning of Chance and Cher. Appellant averred that appellees had created a dangerous condition by negligently

maintaining the pool and that appellees reasonably should have known that the pool posed an unreasonable risk of serious harm to others. Appellant specifically alleged that appellees' pool created an unreasonable risk of harm to children who, because of their youth, would not realize the potential danger. Appellant further asserted that appellees' conduct in maintaining the pool constituted willful and wanton misconduct such as to justify an award of punitive damages.

{¶ 9} Appellant sought damages for the beneficiaries of the deceased, for Kyleigh's mental anguish for witnessing the drownings, for mental anguish for Cher before her death, and for punitive damages. Appellees denied any negligence and asserted affirmative defenses of contributory negligence and assumption of the risk.

{¶ 10} Appellees filed a motion for summary judgment, which the trial court granted on September 4, 1998. The trial court found that Chance and Cher were trespassers on appellees' property and that appellees therefore owed them only a duty to refrain from wanton and willful misconduct. The trial court further rejected appellant's argument that appellees' maintenance of the swimming pool amounted to a dangerous active operation that would create for them a duty of ordinary care pursuant to *Coy v. Columbus, Delaware & Marion Elec. Co.* (1932), 125 Ohio St. 283, 181 N.E. 131. As the complaint alleged that appellees had violated a duty of ordinary care, the court found for the Stanleys as a matter of law.

{¶ 11} On appeal, the appellate court affirmed the trial court's granting of summary judgment. It, too, held that appellees owed the decedents only a duty to refrain from wanton and willful misconduct, and added that there was no evidence of such misconduct. The appellate court also addressed the issue of appellees' duty to Cher Bennett. The court held that even if she were on the Stanleys' property in an attempt to rescue Chance, she would still have the status only of a licensee, who is owed no greater duty of care than a trespasser.

4

{¶ 12} The cause is now before this court upon the allowance of a discretionary appeal.

*Law and Analysis*

{¶ 13} Ohio has long recognized a range of duties for property owners vis-à-vis persons entering their property. A recent discussion of Ohio's classification system can be found in *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287, 291. Currently, to an invitee the landowner owes a duty "to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition." *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 167, 502 N.E.2d 611, 613. To licensees and trespassers, on the other hand, "a landowner owes no duty * * * except to refrain from willful, wanton or reckless conduct which is likely to injure [the licensee or trespasser]." *Gladon*, 75 Ohio St.3d at 317, 662 N.E.2d at 293. Today, we face the issue of whether child trespassers should become another class of users who are owed a different duty of care.

{¶ 14} This court has consistently held that children have a special status in tort law and that duties of care owed to children are different from duties owed to adults:

"[T]he amount of care required to discharge a duty owed to a child of tender years is necessarily greater than that required to discharge a duty owed to an adult under the same circumstances. This is the approach long followed by this court and we see no reason to abandon it. 'Children of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter. * * * The same discernment and foresight in discovering defects and dangers cannot be reasonably expected of them, that older and experienced persons habitually employ; and therefore the greater precaution should be taken, where children are exposed to them.' " *Di Gildo*

*v. Caponi* (1969), 18 Ohio St.2d 125, 127, 47 O.O.2d 282, 283, 247 N.E.2d 732, 734, quoting Ohio Jurisprudence 2d 512 (1959), Negligence, Section 21.

{¶ 15} Recognizing the special status of children in the law, this court has even accorded special protection to child trespassers by adopting the "dangerous instrumentality" doctrine:

"The dangerous instrumentality exception [to nonliability to trespassers] imposes upon the owner or occupier of a premises a higher duty of care to a child trespasser when such owner or occupier actively and negligently operates hazardous machinery or other apparatus, the dangerousness of which is not readily apparent to children." *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 247, 31 OBR 449, 452, 510 N.E.2d 386, 390.

{¶ 16} That doctrine was developed in *Coy v. Columbus, Delaware & Marion Elec. Co.* (1932), 125 Ohio St. 283, 181 N.E. 131, a case where a six-year-old boy was injured when he touched a high voltage transformer owned by the defendant and located in a vacant lot known to be frequented by children. The court applied a negligence standard to the behavior of the company, despite the fact that the child had been trespassing. This court quoted with favor the court in *Haywood v. S. Hill Mfg. Co.* (1925), 142 Va. 761, 765-766, 128 S.E. 362, 363-364:

" 'Certainly a deadly, hidden force, as in this case, should not be left easily accessible to children whose frequent presence in this vicinity was known to the defendant, and acquiesced in by it, and this without so much as a danger sign anywhere thereabout. * * * The care must be commensurate with the danger.' "

{¶ 17} Thus, the court adopted as early as 1932 some of the hallmarks of the attractive nuisance doctrine. Elements such as knowledge of children's presence, the maintenance of a potentially dangerous force, and an exercise of care by the owner commensurate with the danger are a part of the attractive nuisance doctrine in most states, as reflected in Section 339 of the Restatement of Torts.

**{¶ 18}** Despite the fact that in premises liability cases a landowner's duty is defined by the status of the plaintiff, and that children, even child trespassers, are accorded special protection in Ohio tort law, this court has never adopted the attractive nuisance doctrine. The doctrine as adopted by numerous states is set forth in Restatement of the Law 2d, Torts (1965), Section 339:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon land if:

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

**{¶ 19}** This court has never explicitly rejected the Restatement version of the doctrine, which was adopted in 1965. Instead, Ohio's tradition in this area of the law is based upon this court's rejection in 1907 of the "turntable doctrine" in *Wheeling & Lake Erie RR. Co. v. Harvey* (1907), 77 Ohio St. 235, 83 N.E. 66, paragraph two of the syllabus. In *Harvey*, this court held in paragraph one of the syllabus that "[i]t is not the duty of an occupier of land to exercise care to make it safe for infant children who come upon it without invitation but merely by sufferance."

{¶ 20} The "turntable doctrine" was a somewhat controversial doctrine wherein railroads could be liable to children for injuries suffered on unguarded railroad turntables. The theory of liability was established in *Sioux City & Pacific RR. Co. v. Stout* (1873), 84 U.S. (17 Wall.) 657, 21 L.Ed. 745, and had been adopted by many states as of 1907. The burning question for many years was whether to apply the doctrine to non-turntable cases. Many of the states that adopted the turntable doctrine refused to apply it to cases not involving turntables. *Id*. at 245, 83 N.E. at 69-70.

{¶ 21} However, the theory of liability has evolved since 1907. The Restatement of the Law, Torts (1934) and Restatement of the Law 2d, Torts (1965) removed legal fictions and imposed balancing factors to consider on behalf of landowners. Comment, The Restatement's Attractive Nuisance Doctrine: An Attractive Alternative for Ohio (1985), 46 Ohio St. L.J. 135, 138-139. Ohio's refusal to recognize the turntable doctrine in 1907 was not a serious anomaly at the time; today, our failure to adopt the attractive nuisance doctrine is.

{¶ 22} Ohio is one of only three states that have not either created a special duty for trespassing children or done away with distinctions of duty based upon a person's status as an invitee, licensee, or trespasser. *Kessler v. Mortenson* (Utah 2000), 16 P.3d 1225, 1228; Comment, *supra*, 46 Ohio St.L.J. at 147; Drumheller, Maryland's Rejection of Attractive Nuisance Doctrine (1996), 55 Md.L.Rev. 807, 810, and fn. 32.

{¶ 23} In more recent years, this court has failed to address the issue of attractive nuisance head-on. In *Elliott v. Nagy* (1986), 22 Ohio St.3d 58, 22 OBR 77, 488 N.E.2d 853, this court avoided the opportunity to adopt the attractive nuisance doctrine, stating that the case at hand "present[ed] no compelling reasons meriting the adoption of the attractive nuisance doctrine." *Id*. at 61, 22 OBR at 79, 488 N.E.2d at 855. *Elliott* was a swimming pool case. However, in that case, the child who perished in the pool was visiting her grandparents, who lived one

hundred to three hundred feet from the neighbor who owned the pool. Rather than rejecting the doctrine of attractive nuisance, this court simply declined to apply it in *Elliott*, finding that the neighbors could not have foreseen that a nineteen-month-old child would be visiting her grandparents and wander into their yard. The court held in its syllabus:

"The attractive nuisance doctrine will not extend tort liability to the owner of a residential swimming pool where the presence of a child who was injured or drowned therein was not foreseeable by the property owner."

{¶ 24} That ruling is not contradictory to the attractive nuisance doctrine as set forth in the Restatement of Torts. One of the key elements of the doctrine as defined in the Restatement is that "the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass." Section 339(a). The *Elliott* court quite obviously withheld from ruling on whether the attractive nuisance doctrine would apply where the presence of a child is *foreseeable*.

{¶ 25} The court recognized that fact later that same year in *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 191, 26 OBR 160, 164, 497 N.E.2d 1118, 1122, holding that the "linchpin was foreseeability" in this court's refusal to adopt the attractive nuisance doctrine in *Elliott*. The *Wills* court also avoided adopting the attractive nuisance doctrine, concluding that that case involved a dangerous instrumentality.

{¶ 26} In this case, there is at least a genuine issue of fact regarding the foreseeability of one of the Bennett children entering onto the Stanley property. In *Elliott*, the injured child was a visitor; here, the child resided next door. Reasonable minds could conclude that it was foreseeable that one of the Bennett children would explore around the pool.

{¶ 27} Thus, in this case we cannot decline to adopt the attractive nuisance doctrine because of a lack of foreseeability. Any failure to adopt attractive nuisance

would be to reject its philosophical underpinnings and would keep Ohio in the small minority of states that do not recognize some form of the doctrine.

{¶ 28} Adopting the attractive nuisance doctrine would be merely an incremental change in Ohio law, not out of line with the law that has developed over time. It is an appropriate evolution of the common law. While the present case is by no means a guaranteed winner for the plaintiff, it does present a factual scenario that would allow a jury to consider whether the elements of the cause of action have been fulfilled.

{¶ 29} We therefore use this case to adopt the attractive nuisance doctrine contained in Restatement of the Law 2d, Torts (1965), Section 339. In doing so, we do not abandon the differences in duty a landowner owes to the different classes of users. In this case we simply further recognize that children are entitled to a greater level of protection than adults are. We remove the "distinctions without differences" between the dangerous instrumentality doctrine and the attractive nuisance doctrine. See *Wills*, 26 Ohio St.3d at 192, 26 OBR at 165, 497 N.E.2d at 1123, A.W. Sweeney, J., concurring. Whether an apparatus or a condition of property is involved, the key element should be whether there is a foreseeable, "unreasonable risk of death or serious bodily harm to * * * children." Restatement, Section 339(b).

{¶ 30} The Restatement's version of the attractive nuisance doctrine balances society's interest in protecting children with the rights of landowners to enjoy their property. Even when a landowner is found to have an attractive nuisance on his or her land, the landowner is left merely with the burden of acting with ordinary care. A landowner does not automatically become liable for any injury a child trespasser may suffer on that land.

{¶ 31} The requirement of foreseeability is built into the doctrine. The landowner must know or have reason to know that children are likely to trespass upon the part of the property that contains the dangerous condition. See Section

339(a). Moreover, the landowner's duty "does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully realized by them." *Id*. at Comment *i*. Also, if the condition of the property that poses the risk is essential to the landowner, the doctrine would not apply:

"The public interest in the possessor's free use of his land for his own purposes is of great significance. A particular condition is, therefore, regarded as not involving unreasonable risk to trespassing children unless it involves a grave risk to them which could be obviated without any serious interference with the possessor's legitimate use of his land." *Id.* at Comment *n*.

{¶ 32} We are satisfied that the Restatement view effectively harmonizes the competing societal interests of protecting children and preserving property rights. In adopting the attractive nuisance doctrine, we acknowledge that the way we live now is different from the way we lived in 1907, when *Harvey* was decided. We are not a rural society any longer, our neighbors live closer, and our use of our own property affects others more than it once did.

{¶ 33} Despite our societal changes, children are still children. They still learn through their curiosity. They still have developing senses of judgment. They still do not always appreciate danger. They still need protection by adults. Protecting children in a changing world requires the common law to adapt. Today, we make that change.

{¶ 34} Finally, we add that on remand should the facts establish that the attractive nuisance doctrine applies in this case, that finding would also affect the duty of care the appellees owed to Cher Bennett if Cher entered the property to rescue her son. The appellate court held that even if it is assumed that Cher entered the Stanleys' property to rescue Chance, her status was still that of a licensee. The court reasoned that in that instance, Cher would possess a privilege to enter the property, and that a person privileged to enter the land is owed the same duties as a licensee.

{¶ 35} On remand, the evidence may establish that Cher's status was that of a rescuer. This court has held pertaining to rescuers that "if the rescuer does not rashly and unnecessarily expose himself to danger, and is injured, the injury should be attributed to the party that negligently, or wrongfully, exposed to danger, the person who required assistance." *Pennsylvania Co. v. Langendorf* (1891), 48 Ohio St. 316, 28 N.E. 172, paragraph three of the syllabus. See, also, *Pittsburg[h], Cincinnati, Chicago & St. Louis Ry. Co. v. Lynch* (1903), 69 Ohio St. 123, 68 N.E. 703. While the attractive nuisance doctrine is not ordinarily applicable to adults, it "may be successfully invoked by an adult seeking damages for his or her own injury if the injury was suffered in an attempt to rescue a child from a danger created by the defendant's negligence." 62 American Jurisprudence 2d (1990), Premises Liability, Section 288. Therefore, we hold that if Cher Bennett entered the Stanleys' property to rescue her son from an attractive nuisance, the Stanleys owed her a duty of ordinary care.

{¶ 36} Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur.

MOYER, C.J., concurs in part and dissents in part.

COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**MOYER, C.J., concurring in part and dissenting in part.**

{¶ 37} I concur in the decision of the majority in paragraph one of the syllabus. I do not concur in the second paragraph of the syllabus or that portion of the opinion that supports it.

———————————

**COOK, J., dissenting.**

**{¶ 38}** The majority uses this case to adopt the attractive nuisance doctrine as stated in 1 Restatement of the Law 2d, Torts (1965), Section 339. I am well aware of the fact that an overwhelming majority of American jurisdictions have adopted the attractive nuisance doctrine in some form. I also recognize the important public-policy considerations underlying the doctrine and that this court has been, and should be, willing to reexamine its common-law doctrines in appropriate cases. See *Elliott v. Nagy* (1986), 22 Ohio St.3d 58, 60, 22 OBR 77, 78, 488 N.E.2d 853, 855. But if this court is to effect a significant change in Ohio law, as it does today with the adoption of Section 339, it should do it in a case in which the issue is properly before the court. In this case, the record reflects that the Bennetts waived any right to pursue the attractive nuisance doctrine as a theory of recovery.

**{¶ 39}** In the trial court, the Stanleys moved for summary judgment, arguing that Cher Bennett and her son were "undiscovered trespassers" to whom no duty was owed except to refrain from willful and wanton misconduct. The Stanleys' motion also noted that this court had refused to adopt the attractive nuisance doctrine. In response to the Stanleys' motion, the Bennetts expressly disclaimed any reliance on the attractive nuisance doctrine, despite having pleaded the very elements of it in their complaint. On appeal to the Fourth District Court of Appeals, the Bennetts raised eight assignments of error, none of which argued the applicability of the attractive nuisance doctrine. In fact, the Bennetts again disclaimed that theory of recovery, stating that they "do not have to rely upon the doctrine of attractive nuisance to prevail in this case." Finally, in their appeal to this court, the Bennetts raise four propositions of law, none of which relates to the attractive nuisance doctrine. The Bennetts' merit brief to this court states in no uncertain terms, just as in the court of appeals, that they "do not have to rely upon the doctrine of attractive nuisance to prevail in this case."

**{¶ 40}** The procedural history of this case shows that the Bennetts, at every stage of the litigation, have deliberately declined to raise the attractive nuisance doctrine as a theory of the Stanleys' liability. The Bennetts have accordingly waived any argument for adopting the attractive nuisance doctrine. It is well settled that we will not consider issues not presented in the trial court. *State ex rel. Zollner v. Indus. Comm.* (1993), 66 Ohio St.3d 276, 278, 611 N.E.2d 830, 832. Similarly, we will not consider a claim of error that an appellant failed to raise in the court of appeals. *Foran v. Fisher Foods, Inc.* (1985), 17 Ohio St.3d 193, 194, 17 OBR 430, 431, 478 N.E.2d 998, 999.

**{¶ 41}** Admittedly, the briefs submitted to this court are not entirely devoid of arguments concerning the attractive nuisance doctrine and, in particular, Section 339 of the Restatement of Torts. But these arguments appear only in the brief of *amicus curiae*, Ohio Academy of Trial Lawyers, and in the Bennetts' reply brief. Neither brief properly brings the issue before us. An *amicus curiae* is not a party to the case and may not interject issues and claims not raised by the parties. *Lakewood v. State Emp. Relations Bd.* (1990), 66 Ohio App.3d 387, 394, 584 N.E.2d 70, 74. And a reply brief cannot raise a new issue that the appellants failed to raise in their merit brief. See *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 135, 679 N.E.2d 1109, 1113, fn. 2 (Lundberg Stratton, J., concurring in part and dissenting in part); *State v. Murnahan* (1996), 117 Ohio App.3d 71, 82, 689 N.E.2d 1021, 1028.

**{¶ 42}** Although the majority offers compelling reasons for adopting the attractive nuisance doctrine, it is not appropriate to establish this groundbreaking rule in the case at bar. The Bennetts chose to litigate avenues other than the attractive nuisance doctrine and successfully petitioned this court for review on those issues. The majority ignores the Bennetts' legal claims in favor of reaching an issue that the Bennetts waived in the lower courts. I would address only the

propositions of law actually raised by the Bennetts and affirm the judgment of the court of appeals for the reasons stated in its opinion.

{¶ 43} Even if the Bennetts had properly preserved the attractive nuisance issue for our review, I would decline to join the majority's second syllabus paragraph. The majority holds, without citation of any supporting case law, that an *adult* may successfully invoke the attractive nuisance doctrine if the adult suffered injury "in an attempt to rescue a child from a danger created by the defendant's negligence." Yet this extension of the doctrine is unnecessary to assure recovery for an adult who sustains injury in an attempt to rescue a child placed in danger by the tortfeasor's negligence. As the majority correctly observes, a person injured during an attempted rescue may recover from the party negligently causing the danger to the same extent as the person who required assistance from the rescuer. See *Pittsburg[h], Cincinnati, Chicago & St. Louis Ry. Co. v. Lynch* (1903), 69 Ohio St. 123, 68 N.E. 703, syllabus. This "rescue doctrine" has long been a part of Ohio's common law. *Estate of Minser v. Poinsatte* (1998), 129 Ohio App.3d 398, 401-402, 717 N.E.2d 1145, 1148; *Reese v. Minor* (1981), 2 Ohio App.3d 440, 2 OBR 534, 442 N.E.2d 782; see, also, *Pennsylvania Co. v. Langendorf* (1891), 48 Ohio St. 316, 28 N.E. 172, paragraph three of the syllabus. Thus, a possessor of land who is liable to a child under the attractive nuisance doctrine is also liable for injuries suffered by the adult rescuer of the child. See *Blackburn v. Broad Street Baptist Church* (1997), 305 N.J.Super. 541, 702 A.2d 1331; *Brady v. Chicago & N.W.R. Co.* (1954), 265 Wis. 618, 625-626, 62 N.W.2d 415, 419. But this liability is predicated on a straightforward application of the rescue doctrine and not on any extension of the attractive nuisance doctrine to cover adults.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____

*McCauley, Webster & Emrick* and *James H. McCauley*, for appellants.

*Theisen, Brock, Frye, Erb & Leeper Co., L.P.A.*, *John E. Erb* and *Abe Sellers*, for appellees.

*A William Zavarello Co., L.P.A., A William Zavarello* and *Rhonda Gail Davis*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

––––––––––––––––––