[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] Although appellee spells his name "Dirk," with an "r" rather than "Dick," the entry appealed from uses the "Dick" spelling, and hence we retain the misspelling in our caption.
 DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Tranquility Community Church, Inc., appeals the judgment of the Hillsboro Municipal Court, which found that appellant violated the terms of its lease with Plaintiffs-Appellants Dirk Wayne Anderson and Steven Ray Anderson. Appellant asserts that the trial court's judgment was against the manifest weight of the evidence and constituted an abuse of discretion.
 {¶ 2} We disagree and affirm the judgment of the trial court.
 Statement of the Facts and Procedural Posture {¶ 3} In 1991, Defendant-Appellant Tranquility Community Church, Inc., leased approximately eighteen acres of land in Highland County from Marie Cayse. Several buildings and structures were located on the property and included in the lease. The term of the lease was for fifteen years commencing on January 1, 1992, and was renewable at appellant's option for another fifteen-year period commencing on January 1, 2007.
 {¶ 4} According to the lease agreement, appellant was to pay $1 for each year of the lease. Appellant paid in advance $15, the cumulative rent for the fifteen-year period. In addition to rent, appellant was responsible for paying property taxes and insurance on the property. During her lifetime, however, Marie Cayse paid the property taxes as a gift to appellant.
 {¶ 5} Further, the lease provided that, "[appellant] will not commit or suffer any waste on the premises or permit them to be used for any * * *, noxious or offensive activity, or cause or maintain any nuisance in the premises." The lease also provided that appellant was to use the property solely as a church camp or for other church-related purposes. Additionally, the lease provided that improvements made to the grounds would become the property of the lessor in the event that the lease ended. All other structures were to be returned to the lessor "in as good a condition as originally leased, save reasonable wear and tear excepted."
 {¶ 6} In 1996, Marie Cayse died. Her grandsons, Plaintiffs-Appellees Dirk Wayne Anderson and Steven Ray Anderson inherited the property pursuant to Ms. Cayse's will, in September 1997.
 {¶ 7} In April 2001, the appellees sent notice to appellant that they intended to terminate the lease. Appellees' bases for terminating the lease were: (1) non-payment of annual rent; (2) non-payment of real estate taxes; and, (3) committing or permitting waste to occur on the property. Regarding the allegations of waste, appellees asserted that appellant failed to remove weeds and other overgrowth from the property, and that appellant also failed to maintain fences, a water cistern, and the buildings on the property. Accordingly, appellees asked appellant to leave and stop using the premises.
 {¶ 8} Appellant did not vacate the premises and on June 26, 2001, appellees filed a complaint with the Hillsboro Municipal Court seeking to evict appellant from the leased property. The complaint asserted the same reasons for the eviction as were provided in the April notice from appellees to appellant. Subsequently, appellant filed its answer.
 {¶ 9} In October 2001, a trial was held at which appellees, Wayne Adams, and Paul Rothwell testified. Appellee Dirk Anderson testified that the fence surrounding the pond on the property was down in several places. He also testified that the cistern, that once had been used to provide water to the property, had been filled with gravel without the consent of the owners. In addition, Dirk Anderson testified that of the two outhouses on the property, one was in very poor condition, while the other was removed by appellant without appellees' consent.
 {¶ 10} Appellee Dirk Anderson proceeded to testify concerning the condition of the remaining buildings located on the property. Concerning the men's dormitory, appellee testified that: the electric meter was removed; electrical wires were hanging out of the building; there was a hole in the siding and the roof allowing water to leak into the building; and, appellant constructed a make-shift shower by placing a water drum on the roof of the building and nailing boards to the roof through the shingles to hold the drum in place.
 {¶ 11} Regarding the women's dormitory, Appellee Dirk Anderson testified that the shingles on the roof were in bad shape and in some places missing. Further, some of the windows did not fit the building properly.
 {¶ 12} Appellee further testified that another building, the tabernacle, was in need of a new storm door and paint. Also, some siding on the building was pulled loose and allowed water to run behind the siding.
 {¶ 13} Appellee testified that the cookhouse located near the tabernacle needed new windows and had mildew growing on it. One of the sinks in the building was not working and the roof appeared to be leaking. Also, the wastewater from the cookhouse ran out of the building and onto the ground.
 {¶ 14} Appellee also testified that the property was cluttered with trash, the grass needed mowing, and the weeds needed cut down, all of which were apparently done by appellant before the trial. Appellee presented photographs of the property and buildings during the trial.
 {¶ 15} Appellee Steven Anderson also testified, at which point the appellees rested their case.
 {¶ 16} Wayne Adams, the camp supervisor during some of the camp meetings, testified on behalf of the church. Mr. Adams testified that the camp tabernacle had been destroyed by a tornado in 1993 and that the cookhouse had been damaged by the same tornado. He further testified that the tabernacle was replaced with a modern building with air conditioning. He also testified that the cookhouse was repaired and an addition to it was constructed. According to Mr. Adams, the men's dormitory had new vinyl siding put on it and new storm windows installed. In addition, Adams testified that the electric wiring for the camp was placed underground, that the outhouses had not been used for years, and that the fence around the pond was erected after the lease was signed.
 {¶ 17} Subsequently, Paul Rothwell, appellant's treasurer and a long-time church board member, testified that the church spent about $13,000 to $18,000 on materials to update and repair the men's and women's dormitories and the cookhouse. He further testified that the fence around the pond was not there when the church entered into the lease agreement.
 {¶ 18} Subsequently, the trial court entered its judgment, ruling that appellant had committed or allowed waste to occur on the leased property. Specifically, the trial court found that the church committed waste by: (1) filling the cistern with gravel without prior consent; (2) failing to adequately maintain the structures by allowing some to fall down or by tearing them down; (3) failing to maintain the roofs of several of the buildings and allowing leaks to continue; (4) failing to maintain the fence around the pond and the property-line fence; and, (5) permanently affixing barrels to the roofs of the dormitories, without consent, which caused damage to those roofs. The trial court granted judgment in appellees' favor.
 The Appeal {¶ 19} On November 2, 2001, appellant filed a notice of appeal, presenting the following assignments of error for our review.
 {¶ 20} First Assignment of Error: "The trial court abused its discretion in finding that the lease agreement had been violated by the appellant by committing or allowing the suffering of waste upon the premises."
 {¶ 21} Second Assignment of Error: "The trial court erred in determining the credibility of the witnesses, and the judgment was against the manifest weight of the evidence."
 {¶ 22} At the outset, we note that appellant frames its First Assignment of Error in terms of "abuse of discretion." However, appellant's First Assignment of Error asks this Court to review the factual findings of the trial court, an act that requires this Court to apply the manifest-weight-of-the-evidence standard. Accordingly, the First and Second Assignments of Error will be construed as an assertion that the trial court's findings, that appellant committed waste or allowed waste to occur on the property, were against the manifest weight of the evidence. Thus, we address these assignments of error conjointly.
 {¶ 23} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
 {¶ 24} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 25} Accordingly, we will not second-guess the trial court's determinations of credibility. See id.
 {¶ 26} There is no question that the lease agreement entered into by appellant prohibits waste on the property. The issue presented to this Court is whether the record contains some competent and credible evidence that appellant committed or allowed waste to occur on the property.
 {¶ 27} "Waste has been defined as an unlawful act or omission of duty on the part of a tenant which results in a permanent injury to the real estate. Waste has been divided into two categories, to wit: voluntary and permissive. Voluntary waste is willful waste conducted by a tenant and permissive waste arises from the neglect, omission, sufferance or permission of the tenant in failing to preserve or protect the estate." Morelli Realty v. Quik Shops Food Mart (July 8, 1981), Stark App. No. CA-5549.
 {¶ 28} However, under the common law, a tenant has no general duty to repair the premises, absent a specific lease provision to do so. SeeGoldcamp v. Lutes (July 7, 1983), Scioto App. No. 1394; 65 Ohio Jurisprudence 3d (1996) 393, Landlord and Tenant, Section 404; 92 Ohio Jurisprudence 3d (1999) 316, Waste, Section 11. The tenant's duty is to avoid committing voluntary waste and to return the premises in substantially the same condition as when received, reasonable wear and tear excepted. See id.
 {¶ 29} "Any injurious alteration of buildings is waste." See 92 Ohio Jurisprudence 3d (1999) 314, Waste, Section 10. Likewise, making unauthorized changes in a leased building without justification by the lease is waste. See id. However, "[t]he removal of decayed and dilapidated buildings does not constitute waste if the interest of the remainderman is uninjured." See id., citing Artz v. Search (App. 1932), 12 Ohio Law Abs. 347.
 {¶ 30} In the case sub judice, the lease provides that appellant would not commit waste upon the property, that appellant would pay for insurance on the buildings and apply any monies paid by insurance for damage to the buildings towards the repair of those buildings, and maintain the roadway providing access to the property. The lease does not contain an express provision that appellant had a general duty to repair the premises or buildings, solely the roadway onto the property. Thus, appellant was under no general duty to repair the buildings in question, and failing to repair reasonable wear and tear to the premises would not constitute waste.
 {¶ 31} However, appellant clearly was under a duty to prevent waste, a duty which the trial court found appellant had violated. The trial court found that waste occurred in that: (1) appellant filled the cistern with gravel; (2) appellant failed to maintain some of the structures on the property; (3) appellant failed to prevent or caused damage to the roofs of other structures, which caused leaks to occur; (4) appellant failed to maintain the fences on the property that caused the pond to become an attractive nuisance; and, (5) appellant permanently affixed barrels to the roofs of two structures, which permanently damaged the roofs of those structures.
 {¶ 32} A thorough review of the record reveals the existence of some competent, credible evidence to support the trial court's findings that appellant committed waste upon the premises. Appellees testified concerning the conditions of the various structures on the property, and that testimony was supported with extensive photographic documentation. Further, appellees presented testimony that alterations to the premises occurred after the present action was filed and without their consent.
 {¶ 33} We do note, however, that the court's finding regarding the fence around the pond appears to rely on the lease's prohibition of maintaining a nuisance on the property. Appellees did not raise this provision and the parties presented no evidence concerning the doctrine of attractive nuisance. Further, a close reading of Bennet v. Stanley,92 Ohio St.3d 35, 2001-Ohio-128, 748 N.E.2d 41, paragraph one of the syllabus, reveals that attractive nuisances are artificial conditions created upon land, and no evidence was put forth that this pond was artificially created.
 {¶ 34} Nevertheless, the trial court's judgment that appellant committed waste upon the leased premises was not against the manifest weight of the evidence.
 Conclusion {¶ 35} Accordingly, we overrule appellant's assignments of error and AFFIRM the well-reasoned judgment of the trial court.
Judgment affirmed.
Abele, P.J.: Concurs in Judgment Only.
Harsha, J.: Dissents with Dissenting Opinion.