APONTE, Appellant,

v.

CASTOR et al., Appellees.

[Cite as *Aponte v. Castor*, 155 Ohio App.3d 553, 2003-Ohio-6769.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–03–001.

Decided Dec. 12, 2003.

554

Ronald F. Leonhardt, for appellant.

Thomas J. Antonini and Shawn M. Tracey, for appellees.

---

KNEPPER, Judge.

{¶ 1} This is an appeal from the judgment of the Williams County Court of Common Pleas, which granted summary judgment to appellees, Michael and Deborah Castor, against appellant, Teresa Aponte, individually and as next friend of Erica Aponte, her minor daughter. Erica Aponte, then age seven, attended Thanksgiving dinner at the home of appellees, her aunt and uncle, on November 27, 1997. Following dinner, accompanied by her cousin, Erica went outside and crawled under an electric wire fence that enclosed appellees' horse paddock area. Erica was subsequently kicked in the face by appellees' horse, sustaining injury.

{¶ 2} Appellant filed suit against appellees on November 27, 2001, alleging negligence and seeking damages for Erica's injuries. On November 1, 2002, and November 5, 2002, respectively, appellees filed a third-party complaint against Erica's father, Rafael Aponte, and a counterclaim against appellant, alleging negligent supervision and seeking contribution from Mr. and Mrs. Aponte in the event that appellees were found liable for Erica's injuries.

{¶ 3} On November 22, 2002, appellees filed a motion for summary judgment, arguing that insofar as Erica did not have permission to leave the house or enter the stable/paddock area, and did so without her parents' or appellees' knowledge, Erica was a trespasser, and therefore, appellees owed her a duty only to refrain from willful, wanton, or reckless misconduct, or in the alternative, owed her a duty only of ordinary care, which they did not breach. Appellant responded that Erica was a social guest, not a trespasser, that she was owed a duty of care commensurate with her young age, that appellees owed appellant a duty to warn appellant regarding the dangerous nature of the horse, and that genuine issues of material fact existed which would preclude the granting of summary judgment. The trial court granted summary judgment on January 6, 2003, and held that Erica was a trespasser, that appellees did not owe a duty of ordinary care, that appellees' conduct was not willful and wanton, and that the doctrine of attractive nuisance was inapplicable to the case. On January 23, 2003, the trial court dismissed the pending counterclaim and third-party complaint against Teresa and Rafael Aponte.

{¶ 4} Appellant appeals from the decision of the trial court and raises the following assignments of error:

{¶ 5} "A. The trial court erred in finding that appellant was a trespasser as a matter of law and that genuine issues of material fact exist as to appellant's legal status upon appellees' premises.

{¶ 6} "B. The trial court erred in holding as a matter of law that the standard of care appellees owed appellant was only to refrain from willful, wanton and reckless conduct."

{¶ 7} The legal duty that landowners owe a person who enters their land depends upon the status of the entrant (i.e., trespasser, licensee, or invitee). *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287. In *Gladon,* the Ohio Supreme Court described the entrant's status as follows:

{¶ 8} "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner. *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 167, 502

N.E.2d 611, 613, *Scheibel v. Lipton* (1951), 156 Ohio St. 308, 46 O.O. 177, 102 N.E.2d 453, paragraph one of the syllabus.

{¶ 9} "The status of an invitee is not absolute but is limited by the landowner's invitation. ' * * * [T]he visitor has the status of an invitee only while he is on the part of the land to which his invitation extends—or in other words, the part of the land upon which the possessor gives him reason to believe that his presence is desired for the purpose for which he has come. * * * If the invitee goes outside of the area of his invitation, he becomes a trespasser or a licensee, depending upon whether he goes there without the consent of the possessor, or with such consent.' 2 Restatement of the Law 2d, Torts (1965), 181–182, Section 332, Comment *l*." *Gladon*, 75 Ohio St.3d at 315, 662 N.E.2d 287.

{¶ 10} "A landowner owes a duty to an invitee to exercise ordinary care for the invitee's safety and protection." *Gladon* at 317, 662 N.E.2d 287, citing, *Light*, 28 Ohio St.3d at 68, 502 N.E.2d 611. Whereas, with respect to a trespasser or licensee, "a landowner owes no duty * * * except to refrain from willful, wanton or reckless conduct which is likely to injure [the licensee or trespasser]." Id.

{¶ 11} In *Scheibel*, the Ohio Supreme Court recognized an additional status of "social guest." *Scheibel*, 156 Ohio St. 308, 46 O.O. 177, 102 N.E.2d 453, paragraph one of the syllabus. A host owes a social guest the duty "to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises" and "to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition." *Scheibel* at paragraph three of the syllabus. A host, however, is not an insurer of the safety of a guest, and there is no implied warranty on the part of a host that the premises to which a guest is invited by him are in safe condition. Id. at paragraph two of the syllabus. Rather, a "guest assumes the ordinary risks which attach to the premises." Id. at 315, 46 O.O. 177, 102 N.E.2d 453, citing 38 American Jurisprudence, 778 Section 117.

{¶ 12} In this case, it is undisputed that Erica was invited for Thanksgiving dinner and that she did not obtain permission from appellees or any other adult to exit the house or visit the horse penned in the paddock. Moreover, it is uncontested that Erica was never permitted by appellees to roam freely in "any part of the subject property without both parental supervision and permission." Upon a thorough review of the record, and finding no genuine issues of material fact, we find that Erica was only invited to appellees' home for Thanksgiving dinner and was not invited to freely explore the property. Accordingly, we find

that once Erica left the house and entered the horse paddock area, she exceeded the scope of appellees' invitation and became a trespasser or a licensee on appellees' property.

{¶ 13} Normally, a landowner would owe a trespasser or licensee only the duty to refrain from wanton, willful, or reckless conduct that is likely to injure the licensee or trespasser. *Gladon,* supra, at 317, 662 N.E.2d 287. However, the Ohio Supreme Court has held that the amount of care required of a landowner to discharge a duty owed to a child of tender years who is exposed to danger on the landowner's property is greater than that required to discharge a duty to an adult exposed to the same danger. *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 47 O.O.2d 282, 247 N.E.2d 732, paragraph one of the syllabus; and *Bennett v. Stanley* (2001), 92 Ohio St.3d 35, 39, 748 N.E.2d 41. The rationale for this rule is that " '[c]hildren of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter * * *. The same discernment and foresight in discovering defects and dangers cannot be reasonably expected of them, that older and experienced persons habitually employ; and therefore, the greater precaution should be taken, where children are exposed to them.' " *Di Gildo* at 127, 47 O.O.2d 282, 247 N.E.2d 732, quoting 39 Ohio Jurisprudence 2d 512, Negligence, Section 21. "[E]ven child trespassers are accorded special protection in Ohio tort law." *Bennett,* 92 Ohio St.3d at 40, 748 N.E.2d 41.

{¶ 14} In recognizing that "children are entitled to a greater level of protection than adults," the Ohio Supreme Court in *Bennett* adopted the attractive-nuisance doctrine contained in Restatement of the Law 2d, Torts (1965), Section 339. *Bennett* set forth the attractive-nuisance doctrine as follows:

{¶ 15} "A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:

{¶ 16} "(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

{¶ 17} "(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

{¶ 18} "(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

{¶ 19} "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

{¶ 20} "(e) the possessor fails to exercise reasonable care to eliminate the danger or to otherwise protect the children." *Bennett,* paragraph one of the syllabus.

{¶ 21} In determining a landowner's duty to a child, *Bennett* held that "[w]hether an apparatus or a condition of property is involved, the key element should be whether there is a foreseeable, 'unreasonable risk of death or serious bodily harm to * * * children.' " Id. at 42, 748 N.E.2d 41, citing Restatement, Section 339(b). However, "[e]ven when a landowner is found to have an attractive nuisance on his or her land, the landowner is left merely with the burden of acting with ordinary care" and "does not automatically become liable for any injury a child trespasser may suffer on that land." Id. The court further stated, with respect to the attractive-nuisance doctrine, the following:

{¶ 22} "The requirement of foreseeability is built into the doctrine. The landowner must know or have reason to know that children are likely to trespass upon the part of the property that contains the dangerous condition. See Section 339(a). Moreover, the landowner's duty 'does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully realized by them.' *Id.* at Comment *i." Bennett* at 42–43, 748 N.E.2d 41.

{¶ 23} Appellant argues that appellees' horse created an attractive nuisance, and appellees owed Erica the duty of ordinary care. We, however, find no authority in Ohio law that establishes that an animal is "an artificial condition" that invokes the doctrine of attractive nuisance. Accordingly, we find that the attractive-nuisance doctrine is not applicable in this case. Nevertheless, based upon the holdings and rationale in *Bennett* and *Di Gildo,* we find that "[c]hildren of tender years, and youthful persons" are generally entitled to a degree of care commensurate with their inability to foresee and avoid dangers, even when trespassing. See *DiGildo* at 127, 247 N.E.2d 732, and *Bennett* at 39, 748 N.E.2d 41.

{¶ 24} In considering whether appellees breached their duty to Erica, we must first consider whether it was foreseeable to appellees that Erica would trespass into the horse paddock area while on their property. Appellant argues that it was foreseeable that Erica, a child guest at Thanksgiving dinner, would wander out to the horse paddock. We, however, find that the undisputed evidence is to the contrary.

{¶ 25} First, neither on the day in question nor during earlier visits was Erica ever given unfettered access to appellees' property; rather, permission and adult supervision were required. Second, at no time was any child guest allowed "to roam freely around the subject property or enter the area in or around the horse paddock area." Third, according to Mr. Castor, on previous visits to the

property, Erica "never unilaterally left the house or entered the area in or around the horse paddock area." Fourth, the horse was enclosed with an electrified wire fence, which, according to Erica, she was warned to avoid. Based on these undisputed facts, we find that it was not foreseeable to appellees that Erica would trespass upon their property into the area of the horse paddock.

{¶ 26} Assuming arguendo that a genuine issue of material fact exists regarding whether it was foreseeable to appellees that Erica would trespass into the horse paddock, we note that the degree of care owed by appellees would have to be proportionate only to Erica's inability to foresee and avoid the perils that she may encounter and, in no event, would appellees' duty to Erica extend to dangerous conditions that were obvious and realized by her. See *Bennett*, supra at 43, 748 N.E.2d 41.

{¶ 27} In this case, it is clear that Erica had an appreciation that horses presented a risk to her. Erica testified that she had been told "never to go behind a horse"; she knew that she was not allowed to be around horses, appellees' horse, or in the corral, without a parent or adult supervision; and that, although she did not remember anyone ever telling her specifically not to go into the corral she was "pretty sure that * * * [appellees] thought that [she] had the common sense not to go there" and that "they knew that if [she] were going to that [she] would ask for an adult to come with [her]."

{¶ 28} Appellant, however, argues that appellees should have warned Erica and her parents regarding this horse's history of aggressive behavior toward a sheep that entered its enclosure. However, based on Erica's own testimony, we find that she knew horses presented a risk, that she was not to go near the electric fence, and that an adult was supposed to accompany her around horses. Accordingly, we find that the potential danger any horse posed to Erica was both known and obvious to her. We therefore find that appellees owed no duty to Erica or her parents to provide additional warnings regarding this horse in particular.

{¶ 29} Based on the foregoing, we find that there are no genuine issues of material fact and that appellees are entitled to summary judgment as a matter of law. Erica was a trespasser on appellees' property, and therefore, appellees were required to refrain only from willful, wanton, and reckless conduct. However, to the extent that Erica's age would entitle her to a greater degree of care than that normally afforded a trespasser, we find that appellees breached no duty to Erica insofar as she fully realized the obvious risk that horses presented and proceeded at her own peril. Accordingly, we find appellant's first and second assignments of error not well taken.

{¶ 30} On consideration whereof, the court finds substantial justice has been done the party complaining, and the judgment of the Williams County Court of

Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.

Judgment affirmed.

PIETRYKOWSKI and LANZINGER, JJ., concur.