[Cite as *Kell v. Russo*, 2012-Ohio-1286.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PAUL J. KELL, Administrator of the Estate of RYAN P. KELL, Deceased | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P. J. |
| | : | Hon. John W. Wise, J. |
| Plaintiff-Appellant | : | Hon. Julie A. Edwards, J. |
| | : | |
| vs. | : | |
| | : | Case No. 2011 CA 00082 |
| CARL J. RUSSO, et al. | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:
Civil Appeal from the Court of Comon Pleas, Case No. 2009 CV 01010

JUDGMENT:
Affirmed

DATE OF JUDGMENT ENTRY:
March 19, 2012

APPEARANCES:

For Plaintiff-Appellant

RHYS B. CARTWRIGHT-JONES
42 North Phelps Street
Youngstown, Ohio 44503-6609

For Defendants-Appellees

CARI F. EVANS
FISCHER, EVANS & ROBBINS
4505 Stephen Circle, NW, Suite 100
Canton, Ohio 44718

*Wise, J.*

**{¶1}** Appellant Paul J. Kell, Administrator of the Estate of Ryan Kell, appeals the jury verdict entered in favor of Appellee Dorothy Russo dba Russo Concrete in the Stark County Common Pleas Court on his wrongful death claim.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** On Friday, March 14, 2008, Ryan Kell and a group of friends left his house and went to the Geisen Haus, a restaurant and bar located in North Canton. At approximately 2:00 a.m., Ryan's friends left the bar with their designated driver, who drove them to Ryan's house on Schneider Street, in North Canton. Ryan, however, chose to walk home, approximately two miles. According to Ryan's friends, he had walked home on a number of previous occasions.

**{¶3}** The temperature on this night was around the freezing mark and the weather conditions included thick, dense fog. (T. Vol. I at 15-16, T. Vol. III at 109-110).

**{¶4}** Cell phone records show that Ryan placed a call to the group's designated driver at 2:02 a.m., which lasted about five minutes. (T. Vol. III at 149-152). Ryan also received a call from Ian Kuntz at 2:16 a.m., during which Ian claims he offered Ryan a ride but was refused and told by Ryan that he was walking. (T. Vol. III at 185). Ryan also placed a final call to Hayley Nail at 2:28 a.m.

**{¶5}** The following morning, when it was discovered that Ryan never made it home, family and friends formed a search party.

**{¶6}** On Sunday, March 16, 2011, the nearby property of Russo Concrete, located on Promway Avenue, was included in the search. (T. Vol. I at 152). During the search of Russo Concrete, someone noticed a cigarette lighter on the ice which had

formed on the surface of the water in the washout pit. (T. Vol. I at 153). The police were called and the local rescue squad responded. (T. Vol. I at 152-153). The rescue squad located and recovered Ryan Kell's frozen body under the ice, submerged in eight feet of water. (T. Vol. I at 137, 15, 236-237).

{¶7} It was later determined that Ryan had a blood alcohol content of 0.19. He also had his cell phone and $140.00 on his person.

{¶8} On March 11, 2009, Paul J. Kell, as Administrator of the Estate of Ryan Kell, filed a wrongful death action in the Stark County Common Pleas Court naming Dorothy Russo, Carl J. Russo dba Russo Concrete aka Russo Readi Mix, and Timothy Russo dba Russo Concrete aka Russo Readi Mix as defendants.

{¶9} On June 22, 2011, the matter proceeded to a jury trial. At trial, which lasted five days, the jury heard testimony from a number of witnesses.

{¶10} Bill Russo, Dorothy Russo's son, testified that he has worked at Russo Concrete since 1974 and has been the plant manager since his father passed away in 2002. (T. Vol. II at 80-81, 114). He described the business property as consisting of approximately five acres in an industrial area. (T. Vol. II at 83). Located on the property are a garage, an office, and batching towers where the trucks are filled. There is also a large open area for storage piles of limestone, gravel and sand. A washout pit was added in the 1990's. (T. Vol. II at 125). The wash out pit was approximately 40 feet by 80 feet and varied in depths. *Id.* The pit gathered and retained water runoff and the excess concrete washed out of the concrete trucks. (T. Vol. II at 125-126, Vol. IV at 177-178). The water in the pit would recede through evaporation and percolation into the ground. (T. Vol. II at 169, 172). The amount of water in the washout pit at any

given time would vary depending on the season and the amount of precipitation. At some point in time after the washout pit was constructed, barrels filled with concrete and large concrete blocks were placed around the perimeter of the washout pit. (T. Vol. II at 134-135). Openings between the concrete blocks allowed the concrete trucks to back up to the edge of the pit. (T. Vol. IV at 206). No accidents have occurred from employees using the washout pit. (T. Vol. IV at 198).

{¶11} Officer Collins and Detective Hall testified that their investigation found no physical evidence to explain how Ryan Kell entered the Russo Concrete property. (T. Vo. III at 75, 116-117).

{¶12} Each of Ryan's friends who were with him at the Geisen Haus testified.

{¶13} Appellant's expert witness, Robert Huston, who specializes in safety and industrial engineering, testified that it was his opinion that Appellee could have done more in the way of safety by erecting a perimeter fence or gates. (T. Vol. II at 300, 302-303, 315-316).

{¶14} Huston, acknowledged that Appellee could not eliminate the washout pit as it was required for the business. (T. Vol. II at 271, 300). Huston further acknowledged that Appellant had "No Trespassing" and "Private Property" signs posted on the property. (T. Vol. II at 319-320). Further, Huston testified that the washout pit is easily visible in the daylight, during business hours. (T. Vol. II at 312).

{¶15} At the conclusion of the evidence, the parties agreed upon jury instructions, which were then presented to the jury.

{¶16} On March 1, 2011, the jury returned a verdict in favor of Russo Concrete, finding that it had not violated any duty of care owed to Ryan Kell.

**{¶17}** Appellant now assigns the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶18}** "I. THE TRIAL COURT ERRED IN ISSUING A "STEPPING INTO THE DARKNESS" JURY INSTRUCTION, TANTAMOUNT TO AN ABSOLUTE FAULT BAR STANDARD, IN ISSUING A [SIC] AN "OPEN AND OBVIOUS" JURY INSTRUCTION RELATIVE TO A CASE THAT INVOLVED A DYNAMIC HAZARD, AND IN FAILING TO INSTRUCT THE JURY AS TO THE DUTY TO KNOWN TRESPASSERS.

**{¶19}** "II. THE MANIFEST WEIGHT OF THE EVIDENCE SUPPORTED A FINDING OF LIABILITY."

### I.

**{¶20}** In his first assignment of error, Appellant assigns error to the trial court's jury instructions.

**{¶21}** More specifically, Appellant argues that the trial court erred in giving the jury an instruction on "stepping into the darkness" and in failing to give an instruction on known trespassers.

**{¶22}** Upon review of the record herein, we find that the trial court and the parties discussed the instructions as a whole and agreed to the instructions that were given to the jury. Appellant did not object to the instructions as given.

**{¶23}** Civ.R. 51, provides:

**{¶24}** "(A) Instructions; error; record

**{¶25}** "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.

**{¶26}** "***.

**{¶27}** "On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."

**{¶28}** It is well-established that a party may not assign as error on appeal "the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Civ.R. 51(A); see, also, *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 32, 734 N.E.2d 782. Moreover, it is well-settled that failure to object at the trial court level to a complained of error results in a waiver of that error on appeal. See, *e.g., Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099; *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 436-37, 659 N.E.2d 1232.

**{¶29}** At oral argument, counsel for Appellant argued that our standard of review should be plain error. However, we find that the plain error doctrine is usually only applied in the criminal context where a defendant's failure to object to an allegedly erroneous jury instruction affects the defendant's substantial rights. See Crim.R. 52(B).

**{¶30}** "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, at paragraph one of the syllabus.

**{¶31}** In *Goldfuss,* the Court explained that the doctrine shall only be applied in extremely unusual circumstances where the error complained of, if left uncorrected, would have a material adverse effect on the character of and public confidence in judicial proceedings. *Id.* at 121, 679 N.E.2d 1099. The Court concluded that the public's confidence is rarely upset merely by forcing civil litigants to live with the errors they themselves or the attorney chosen by them committed at trial. *Id.* at 121-122, 679 N.E.2d 1099.

**{¶32}** Based on the foregoing, Appellant's first assignment of error is overruled.

II.

**{¶33}** In his second assignment of error, Appellant argues that the jury's verdict was against the manifest weight of the evidence. We disagree.

**{¶34}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758, 1982 WL 2911. Accordingly, this Court may overturn a jury verdict as against the manifest weight of the evidence only if the verdict is not supported by competent, credible evidence which goes to all the essential elements of the case, C.E. *Morris Company v. Foley Construction Company* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

**{¶35}** Appellant argues that the jury erred in finding that the hazard herein was open and obvious.

**{¶36}** We have reviewed the record, and we find the verdict is supported by competent and credible evidence going to all the essential elements.

**{¶37}** Appellant's Complaint alleged that Appellee was negligent. "[I]n order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 788 N.E.2d 1088, 2003–Ohio–2573, at ¶ 8, citing *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707.

**{¶38}** We initially note that the duty of care owed by a property owner to a person who is injured on the property depends on the status of the injured person. It was admitted that Ryan Kell was a trespasser on Appellee's property and that Appellee had no knowledge of Kell's presence on such property.

**{¶39}** "A trespasser is ' * * * one who unauthorizedly goes upon the private premises of another without invitation or *inducement, express or implied,* but purely for his own purposes or convenience * * *.' " *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 145, 539 N.E.2d 614 (citation omitted and emphasis sic). "[A] landowner owes no duty to a licensee or trespasser except to refrain from willful, wanton, or reckless conduct which is likely to injure him." *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 317, 662 N.E.2d 287; *Bennett v. Stanley,* 92 Ohio St.3d 35, 38-39, 748 N.E.2d 41, 2001-Ohio-128.

**{¶40}** Furthermore, when a danger is open and obvious, the landowner does not owe a duty to individuals on the premises. *Armstrong,* 2003-Ohio-2573, at ¶ 14, 99 Ohio St.3d 79, 788 N.E.2d 1088 (citation omitted).

**{¶41}** Based on Kell's legal status as a trespasser, Appellant was required to prove that Appellee acted in a reckless, wanton and willful manner toward Ryan Kell.

The evidence put forth by Appellant in support of the proposition was testimony by its expert witness that Appellee breached this duty of care by failing to erect a perimeter fence on its property.

{¶42} In addition to the testimony of Appellant's expert witness, the jury also heard testimony about the location of the washout pit in relation to the layout of the property, that the wash out pit was a requirement for Appellee's business, that Appellee had placed concrete barricades on part of the property and that Appellee had give verbal warnings to neighbors and had posted warning signs on the property.

{¶43} Additionally, the jury heard testimony about the unusual dense fog that covered the area on the night in question, along with Ryan Kell's blood alcohol content.

{¶44} Based on the foregoing, we find that there was relevant, competent and credible evidence presented at trial upon which the fact finder could base its judgment and conclude the jury's verdict is not against the manifest weight of the evidence.

{¶45} Appellants' second assignment of error is overruled.

{¶46} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By: Wise, J.
Farmer, P.J and
Edwards, J. concur.



_____

_____

_____

                    JUDGES

JWW/d 0222

[Cite as *Kell v. Russo*, 2012-Ohio-1286.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PAUL J. KELL, Administrator of the<br>Estate of RYAN P. KELLY, Deceased | : | |
| | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| CARL J. RUSSO, et al. | : | |
| | : | |
| Defendants-Appellees | : | CASE NO. 2011-CA-00082 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.

Costs assessed to appellant.

 

_____

 

_____

 

_____

JUDGES