702 A.2d 1331

PATRICIA BLACKBURN, PLAINTIFF/APPELLANT, v. BROAD STREET BAPTIST CHURCH, DEFENDANT/RESPONDENT, AND ARTHUR R. PUGLIA AND RITA A. PUGLIA, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1997—Decided November 25, 1997.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Evan Edward Laine* argued the cause for appellant (*Gold & Laine*, attorneys; *Mr. Laine*, on the brief).

*Jay H. Greenblatt* argued the cause for respondent (*Jay H. Greenblatt & Associates*, attorneys; *John M. Amorison* and *Nicholas Kierniesky*, on the brief).

The opinion of the court was delivered by

WALLACE, J.A.D.

Plaintiff Patricia Blackburn appeals from summary judgment granted in favor of defendant. The motion judge concluded that plaintiff was not a rescuer but rather a trespasser to whom no duty was owed. On appeal, plaintiff urges that the motion judge erred in concluding that defendant owed her no duty of care. She asserts that she was an invitee under theories of implied invitation and the rescue doctrine at the time she suffered her accident. We hold that there were genuine issues of material fact that precluded the granting of summary judgment. *R.* 4:46–2. Specifically, there were genuine issues regarding whether defendant breached a duty to plaintiff by allowing an accumulation of water on its property and whether plaintiff's rescue attempt was reasonable.

Viewing the record in the light most favorable to the plaintiff, as we must, *see Brill v. Guardian Life Ins. Co.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995), the record establishes the following facts. In April 1993, plaintiff was visiting the home of a friend in Mount Holly. Plaintiff's friend lived across the street from the property of defendant Broad Street Baptist Church and had a three year old child who played on defendant's property. Defendant had a large open yard without a fence. There is also a low point on the property where rain water accumulated. It had rained quite heavily that day and a pond-like puddle claimed to be two and a half feet deep formed in the low area. At some point while plaintiff was inside her friend's home, the three year old child noticed her tricycle across the street on defendant's property and wanted to bring it out of the rain. Plaintiff instructed the little girl to stay in the house and that she would retrieve the tricycle.

Plaintiff crossed the street to get the tricycle and noticed the large pond-like puddle that had accumulated on defendant's property as a result of the rain. The tricycle was on the other side of the pond-like puddle and plaintiff intended to avoid the water. Suddenly, she heard the little girl behind her saying that she would get her tricycle. Plaintiff realized that the little girl had walked into the large puddle and was in the middle of it. Plaintiff

was fearful that due to the young age of the child and given the depth of the water that the child was in danger. She immediately walked towards the child, but before she could reach her, plaintiff slipped in the mud under the water, fracturing her leg.

William Nicholson, an engineer, had prepared a site plan of the property for defendant in 1994. The site of the accident was located southeast of the stone parking lot behind the church building. Nicholson testified at deposition that water from certain portions of the church roof and water from the parking lot drained into the low area where the accident occurred. In addition, rain water would flow from the street adjacent to the parking lot, through the lot, and into the low area.

Reverend Chapman, the pastor of the church at the time of the accident, testified that he was aware that during and after heavy rains water would accumulate in the area where the accident occurred. Some time after the accident, the church installed a fence to prevent children from coming onto the property. Rev. Chapman was aware that children played on the property. He stated:

> The area is open and people can cut through from—you know, they used to cut through from Union Street down to Risdon Street or walk through, back and forth, around the corner. There's an alleyway on the side. What really concerned me the most, the reason why we felt the necessity for the fence to be put up, we had problems on our annex, which is across the street. We would observe children on the—it's a flat building on one side and building, tear off the roof. We had to finally put up plexiglass storm windows in the annex and we have a bunch of star effects in the plexiglass windows now. We chose that because asking these children to get off and everything, even some adults said, you know, they played there. And I said, well, they're damaging our property, so please have them leave. And so we went to the police and said what can we do, and they said you need to put a fence. So the annex was fenced in first and that stopped that. Then we observed the children coming on this property.

Reverend Chapman testified that the fencing cost about $2,000. However, he noted that the fencing discussions that he had had with the board prior to installing the fence had not included any reference to protecting children from the low area where the accident occurred.

Based on this evidence, the motion judge concluded that plaintiff was a trespasser and that her status did not change to an invitee as a result of her attempt to remove the child from the water. The judge was satisfied that plaintiff perceived no "immediate danger to the child, and therefore she was not a rescuer." Further, the judge concluded that the pond was a natural condition, rather than an artificial one. Because the water was clearly obvious, the judge found that there was no need to warn even a trespasser. The motion judge analyzed the law as it applied to an adult trespasser and concluded that plaintiff was not a rescuer. We disagree.

In our view, this case should be analyzed from the position of the infant trespasser. Plaintiff only entered the area where she fell because she observed the three year old child in the pond and believed the child was in danger. We noted recently that the "rescue doctrine has long been a part of our State's social fabric." *Burns v. Market Transition Facility*, 281 *N.J.Super.* 304, 310, 657 *A.*2d 472 (App.Div.1995). In this regard, we stressed the comments of Justice Cardozo, then Judge of the New York Court of Appeals, in *Wagner v. International Ry. Co.*, 232 *N.Y.* 176, 179–80 133 *N.E.* 437 (1921):

Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer. The state that leaves an opening in a bridge is liable to the child that falls into the stream, but liable also to the parent who plunges to its aid. *Gibney v. State,* 137 N.Y. 1, 33 N.E. 142, 19 L.R.A. 365 (1893). The railroad company whose train approaches without signal is a wrongdoer toward the traveler surprised between the rails, but a wrongdoer also to the bystander who drags him from the path. [citing authorities] The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man.

The *Restatement (Second) of Torts* § 472 (1965) provides that:

It is not contributory negligence for a plaintiff to expose himself to danger in an effort to save himself or a third person, ... from harm, unless the effort itself is an unreasonable one, or the plaintiff acts unreasonably in the course of it.

■ Moreover, "where a danger has been negligently created, particularly a danger to a child, the intervention of a rescuer is

reasonably foreseeable and, consequently the tortfeasor may be liable to the rescuer based on his negligence which imperiled the person requiring rescue." *Eyrich v. Dam,* 193 *N.J.Super.* 244, 256, 473 *A.*2d 539 (App.Div.), *certif. denied,* 97 *N.J.* 583, 483 *A.*2d 127 (1984).

■ While the child was not ultimately harmed, a factfinder could reasonably conclude that the plaintiff acted reasonably in immediately attempting to remove the young child from the danger of the water. We have no doubt that if the child had fallen in the water and plaintiff was injured trying to rescue the fallen child from drowning, that plaintiff's status would have been that of a rescuer. A person who observes a young child in a dangerous situation does not have to wait until the child is injured before he or she attempts to remove the child from that danger. Consequently, if the danger to the child was negligently created or allowed to remain on the premises, defendant may be liable to plaintiff because the intervention of a rescuer is reasonably foreseeable.

We turn now to consider if there was a material issue of fact concerning whether defendant breached a duty to the young child. In this regard, we begin our analysis with the infant-trespasser exception of the *Restatement (Second) of Torts* § 339. This section provides:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

[*Restatement (Second) of Torts* § 339 (1965).]

Our Supreme Court followed the Restatement's infant-trespass-er rule in *Strang v. South Jersey Broad. Co.,* 9 *N.J.* 38, 45, 86 *A.*2d 777 (1952). The Court reasoned that the infant-trespasser exception to the general rule of no liability to a trespasser "represents a prudent and essential accommodation of the landowner's right to the use of his land and society's interest in the humane and the protection of the life and limb of its youth and the individual's interest in personal security." *Ibid.*

A plaintiff must establish each of the five elements under § 339 to prove a *prima facie* case. *Coughlin v. U.S. Tool Co.,* 52 *N.J.Super.* 341, 342, 145 *A.*2d 482 (App.Div.1958), *certif. denied,* 28 *N.J.* 527, 147 *A.*2d 305 (1959). "All circumstances of each case are of pivotal significance in applying the rule and in deciding whether a jury question exists in applying the elements under the rule." *Vega by Muniz v. Piedilato,* 294 *N.J.Super.* 486, 493, 683 *A.*2d 845 (1996), *certif. denied,* 149 *N.J.* 139, 693 *A.*2d 109 (1997) (citing *Diglio v. Jersey Cent. Power & Light Co.,* 39 *N.J.Super.* 140, 145, 120 *A.*2d 650 (App.Div.1956)).

The first element under § 339 is that the possessor of land knows or has reason to know that children are likely to trespass. *Restatement, supra,* at § 339. Rev. Chapman testified that he knew children played on the church property. He was aware that children would cross the low area and travel to the area of the Annex. Further, he was aware that after a heavy rain the low area would be flooded. Despite this knowledge, Rev. Chapman testified that he never discussed the ponding effect with the board of trustees of the church. Further, he stated that the fence was later installed to keep children from playing at the back of the property. We are convinced that a jury question exists concerning whether defendant knew or had reason to know that children were likely to trespass in the low area where the plaintiff was injured.

The second element is that defendant knew or had reason to know and realized that the condition involves an unreasonable risk

of death or serious bodily injury to children. *Restatement, supra,* at § 339. Again, Rev. Chapman was aware of the accumulation of water on the property after a heavy rain. In this regard, *Restatement supra,* § 339, comment k (1965),. instructs that "[a] condition may be peculiarly dangerous to children because of their tendency to intermeddle with things which are notoriously attractive to them, but this is not the only childish characteristic which may make a condition, which involves no serious risk to an adult, highly dangerous to children." A reasonable factfinder could conclude that a young child is likely to walk through a small pond of water rather than walk around it. Such a young child would not appreciate the danger of walking through the water. Moreover, Restatement, *supra* § 339(b), must be read in conjunction with clause (c), the third element which provides that a child, due to his age, would not realize the risk involved in going into the area. We are satisfied that it was for the jury to decide whether defendant should have realized the unreasonable risk of serious harm to young children by not protecting against a child's access to the pond-like area.

The fourth element is the utility to defendant maintaining the condition and the burden of eliminating the danger are slight compared with the risk to children. *Restatement, supra,* § 339(d). Rev. Chapman testified that the cost of installing a fence to keep children from walking in the area was approximately $2,000. In fact, defendant had installed a fence subsequent to the incident. Clearly, there was sufficient evidence for a jury to decide whether plaintiff satisfied this element.

The fifth element requires proof that defendant failed to exercise reasonable care to eliminate the danger or otherwise to protect the children. *Restatement, supra,* § 339(e). This element is similar to the previous one. At the time of the incident, defendant had taken no steps to remove the condition or to warn children of the danger. Consequently, there was sufficient evidence for a jury to decide whether plaintiff satisfied this element.

Our conclusion that plaintiff presented sufficient evidence to satisfy a *prima facie* case under *Restatement, supra,* § 339 does not address the remaining requirement that the condition that caused the injury must be an artificial condition. In the caveat to § 339 of the *Restatement,* the Institute declined to take a position on whether the infant trespasser rule applied to natural conditions of the land.

> p. The Caveat leaves open the question whether the rule stated in this Section may not apply to natural conditions of the land. The case law thus far indicates that it does not so apply; but in all of the decided cases the condition has been one, such as a body of water, which the child might·be expected to understand and appreciate, as stated in Comment *j.* In most instances the burden of improving land in a state of nature in order to make it safe for trespassing children would be disproportionately heavy (see Clause (d)), and for that reason alone there would be no liability. Cases may, however, arise in which there would be no such disproportionate burden, and the natural condition is one which the child could be expected not to understand. The Caveat leaves open the possibility of liability in such a case.
>
> [*Restatement (Second) of Torts* § 339 comment p (1965).]

Although this case may well be one where the rules applicable to artificial condition should be applied to a natural condition, we need not make that determination. We are satisfied that there was sufficient evidence for a factfinder to conclude that the ponding-effect was an artificial condition. The church buildings and the parking lot had been constructed on the property. The engineer testified that rain water from portions of the roof and from the stone driveway area contributed to the accumulation of water in the low area. The church building, with the resulting flow of rain water from the roof and the stoned parking lot were not natural conditions of the land, but instead were artificial conditions contributing to the accumulation of rain water on the property. *See generally Prosser on Torts* § 59 (5th ed.1989). It was error to conclude as a matter of law that the low area of the pond was a natural condition.

In sum, we hold that there were genuine issues of material fact concerning whether defendant breached the duty it owed to infant-trespassers to exercise reasonable care to warn of or to remove the dangerous condition on the land and whether plaintiff acted

reasonably in attempting to remove the young child from the water. Consequently, it was error to grant summary judgment in favor of defendant.

Reversed.