On Application for Rehearing

SEE, Justice.
This Court’s opinion of January 5, 2007, is withdrawn, and the following is substituted therefor.
James E. Laster, Jr., a minor (“James”), by and through his parents and next friends, James E. Laster, Sr., and Gloria Laster, and James E. Laster, Sr., and Gloria Laster, individually, appeal a summary judgment in favor of Norfolk Southern Railway Company, Inc., and the Alabama Great Southern Railway Company. Because there are no genuine issues of material fact as to whether the railroads violated any duty to James, we affirm the summary judgment.
7. Factual and Procedural History
In August 2000, a train operated by Norfolk Southern Railway Company, Inc., and the Alabama Great Southern Railway Company (collectively “Norfolk Southern”) severed the right foot of 10-year-old James, on private property owned by Norfolk Southern in Birmingham. Earlier that day, James had left his parents’ house to play with nine-year-old Raymond Smith. James and Raymond decided to walk to Woodward Park. However, instead of walking on McMillion Avenue, they decided to walk along the railroad right-of-way that runs parallel to McMillion Avenue. James’s parents had warned him not to walk on the right-of-way without an adult present, and James admitted that he knew that it was dangerous to take that route. However, he testified that he walked on the right-of-way because he was afraid of the fast cars, dogs, and “crazy people” on McMillion Avenue.
While James and Raymond were walking along the right-of-way, a train approached, and they moved as far from the tracks as the trees lining the tracks would allow. The train slowed and came to a stop in front of them. They turned around and began walking back toward James’s house, because, James said, he was afraid that the train might start to move again. As James and Raymond passed an open hopper car, Raymond climbed the ladder to the top of the car. James had heard a *926 whooshing sound of air from the brakes of the train, and, because he thought that the train might start moving, he called for Raymond to come down. Instead, Raymond replied, “Hold up.” James decided to pull his friend down, and he stood with his right foot on the rail in order to reach Raymond. Raymond fell on top of James, and James felt a burning pain in his right foot. The train had started rolling, and it rolled over and severed James’s right foot.
James, by and through his parents, and his parents individually (hereinafter referred to collectively as “Laster”) sued Norfolk Southern, asserting claims of negligence and wantonness, as well as the tort of outrage. Laster argues that Norfolk Southern should have known that children would trespass on its property and that they possibly would be injured by a train. Laster points out that, the stretch of track on which James was injured has one of the highest incidences of pedestrian casualties and that, in the past, Norfolk Southern had used a trespasser-abatement program in the area, visiting schools and monitoring the tracks. Laster also argues that the engineer on the train failed to blow the horn before releasing the brakes and allowing the slack between the cars to work its way out. He contends that if the engineer had blown the horn before he released the brakes, then James and Raymond would have had time to get away from the railroad car before the train cars actually began to move. He further argues that the train should not have stopped in such a densely populated area, suggesting other workable locations for a stop that would have posed less of a risk to children. Following a hearing, the trial court granted Norfolk Southern’s motion for a summary judgment, issuing an order that did not include factual findings or legal analysis. Laster appeals.
Laster argues that the trial court erred in entering a summary judgment in favor of Norfolk Southern. Norfolk Southern’s argument in support of its summary-judgment motion was that the only duty it owed James was a duty to exercise reasonable care after its train crew discovered the child in a position of peril from which he could not remove himself. Norfolk Southern also contended that James’s and Raymond’s own contributory negligence was the sole proximate cause of James’s injuries. Finally, Norfolk Southern argued that even if the doctrine of attractive nuisance applied in this situation, Laster had not produced sufficient evidence indicating that the train was an attractive nuisance to survive a motion for a summary judgment.

II. Standard of Review

To grant a motion for a summary judgment, the trial court must determine that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden then shifts to the nonmovant to present “substantial evidence” creating a genuine issue of material fact. Ex parte CSX Transp., Inc., 938 So.2d 959, 961 (Ala.2006); see Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida; 547 So.2d 870, 871 (Ala.1989); § 12-21-12(d), Ala.Code 1975.
In our review of a summary judgment, we apply the same standard as does the trial court on factual issues. Ex *927 parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Ex parte CSX Transp., 938 So.2d at 962; Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990). The trial court’s ruling on questions of law carries no presumption of correctness, and this Court reviews de novo the trial court’s conclusion as to the appropriate legal standard to be applied. Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997).

III. Analysis

A. Duty of Care

Laster first argues that the trial court failed to apply the correct duty of care owed by the railroad. In its summary-judgment motion, Norfolk Southern argued that the conventional duty of care owed by a possessor of land to trespassers applies in this case. In general, “[a] railroad owes no duty to prevent injury to an undiscovered trespasser on its track. But when the railroad discovers the trespasser, it has the duty to exercise reasonable care to avoid injuring him or her.” Beam v. Seaboard Sys. R.R., 536 So.2d 927, 928 (Ala.1988) (citation omitted). Because it is undisputed that James and Raymond were trespassers on its property, Norfolk Southern contends, it owed them a duty only to avoid wantonly or negligently injuring them after Norfolk Southern, through its agents, discovered that the boys were in a position of peril.
Although Norfolk Southern correctly states the conventional duty of care a possessor of land owes a trespasser, this Court has long recognized exceptions to this limited duty where child trespassers are involved. First, this Court has recognized the doctrine of attractive nuisance, which we have defined as “a condition which is naturally attractive to children at that place and is likely to be dangerous to such a person in the ordinary course of events, all of which is known to the defendant and not to the injured person and not obviously dangerous in itself.” City of Dothan v. Gulledge, 276 Ala. 433, 435, 163 So.2d 217, 219 (1964). Next, this Court recognized a “straight-negligence” theory of liability, which “arguably developed as a reaction to the restrictive use of the attractive nuisance theory.” Tolbert v. Gulsby, 333 So.2d 129, 132-33 (Ala.1976). Finally, this Court has adopted 2 Restatement (Second) of Torts: Artificial Conditions Highly Dangerous to Trespassing Children § 339 (1965), replacing the earlier theories of attractive nuisance and straight-negligence the Court had previously applied. Tolbert, 333 So.2d at 135.
Section 339 of the Restatement (Second) of Torts, like the doctrines of attractive nuisance and straight negligence, is an exception to the conventional duty of care in the case of trespassing children, requiring property owners to exercise reasonable care in order “to give primacy to child safety rather than unrestricted property rights.” Motes v. Matthews, 497 So.2d 1121, 1122 (Ala.1986). “A possessor of land owes a duty to exercise reasonable care to eliminate an artificial condition on land that poses a danger to children.” Oden v. Pepsi Cola Bottling Co. of Decatur, Inc., 621 So.2d 953, 961 n. 5 (Ala.1993) (citing Fletcher v. Hale, 548 So.2d 135 (Ala.1989), and Lyle v. Bouler, 547 So.2d 506 (Ala.1989)).
Motes held that the conventional duty of care recited in Beam is “not applicable ... except where physical harm to a trespassing child is caused by a natural condition upon the property.... In all other cases, the duty which an occupier of property owes to a trespassing child is set forth in *928 § 339, Restatement (Second) of Torts.” Motes, 497 So.2d at 1122-23.
“ ‘Section 339 provides:
“ ‘ “A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
“ ‘ “(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
“ ‘ “(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
“ ‘ “(c) the children because of their youth do not discover the condition or realize the risk involved in intermed-dling with it or in coming within the area made dangerous by it, and
“ ‘ “(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
“ ‘ “(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.” ’ ”
Ricketts v. Norfolk Southern Ry., 686 So.2d 1100, 1103 (Ala.1996) (quoting Lyle, 547 So.2d at 507).
The threshold issue, then, in deciding whether the conventional duty of care or the duty of care put forward in § 339 applies, is whether the condition that injured the trespassing child was a natural or an artificial one. Norfolk Southern argues that § 339 has no application to a train operating on active railroad tracks, whether moving or stopped temporarily. However, Norfolk Southern has put forward no viable theory under which this Court could hold that a train is not an artificial condition. Norfolk Southern conflates the inquiry as to whether a train is a natural or an artificial condition upon the land with the analysis to be performed once § 339 is held to apply.
Norfolk Southern cites Holland v. Baltimore & Ohio R.R., 431 A.2d 597 (D.C.App.1981), for the proposition that § 339 does not apply where children trespassers are injured by a moving train. The Holland court performed an “independent analysis” of § 339 and concluded that the Restatement test could not be met because element (c) — that the child does not discover the condition or realize the risk — could not be satisfied, reasoning that
“ ‘[njothing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling string of railroad cars. It cannot be compared with the silent, deadly danger of high-power electricity, the inanimate attraction of stationary machines, traps or turntables, loose boards, unseen pitfalls, or the still, inviting depths of a swimming pool to a tiny child.’ ”
431 A.2d at 603 (quoting Herrera v. Southern Pacific Ry., 188 Cal.App.2d 441, 449, 10 Cal.Rptr. 575, 580 (1961)). The fact that a train might be an obvious danger under subparagraph (c) of § 339, however, does not mean that it is a natural condition upon the land. Nor do the other cases upon which Norfolk Southern relies hold that a train that is stopped temporarily is not an artificial condition upon the land; these cases were decided on various other grounds. Louisville & Nashville R.R. v. Spence’s Adm’r, 282 S.W.2d 826, 829 (Ky.1955), applied the conventional duty of care owed to trespassing children; it thus did not involve § 339. Alston v. Baltimore & Ohio R.R., 433 F.Supp. 553, 570 (D.D.C.1977), concluded that “as the ‘circum *929 stances’ of Myron’s accident unquestionably include his full appreciation of the risk, the instant case does not meet the requirement of Restatement 339(c).” Alston dealt with a plaintiff who knew that hopping onto a freight train was dangerous; it does not stand for the proposition that a moving train is not an artificial condition. Finally, in Hughes v. Union Pacific R.R., 114 Idaho 466, 470, 757 P.2d 1185, 1189-90 (1988), the Supreme Court of Idaho stated that Restatement § 339 did not represent the law of Idaho. The court decided that, based upon the particular facts of the case, the plaintiff “ ‘appreciate^] the dangers created by certain artificial conditions.’ ” Hughes, 114 Idaho at 470, 757 P.2d at 1189 (quoting Guilfoyle v. Missouri, Kansas, & Texas R.R., 812 F.2d 1290, 1292 (10th Cir.1987)). We do note that although the Idaho court did not apply § 339, the quoted language suggests that that court considered a train to be an artificial condition. Thus, the cases Norfolk Southern cites simply do not hold that § 339 does not apply to a temporarily stopped train.
Alabama cases distinguish only between those conditions that are natural and those that are artificial; therefore, a train must fit in either the one category or the other. Alabama caselaw suggests that a train, whether stopped or moving, is an artificial condition upon the land. In Slaughter v. Moncrief 758 So.2d 1102, 1106 (Ala.Civ.App.1999), the court held that a temporarily parked pickup truck on an inclined driveway was an artificial condition. Alabama courts have engaged in the § 339 analysis and found a number of conditions upon the land to be artificial: a railroad trestle, Ricketts, 686 So.2d at 1103-07; an electrical transmission switching tower, Henderson v. Alabama Power Co., 627 So.2d 878, 880 (Ala.1993), abrogated on other grounds, Ex parte Apicella, 809 So.2d 865 (Ala.2001); a swimming pool, Fletcher v. Hale, 548 So.2d 135 (Ala.1989); a clay pit, Lyle, 547 So.2d at 507; excavated land, Motes, 497 So.2d at 1124; a trampoline positioned near the roof of a house, Kennedy v. Graham, 516 So.2d 572 (Ala.1987); an air rifle, Tolbert, 333 So.2d at 135; and a house under construction, Tanner v. Lee, 725 So.2d 988, 989 (Ala.Civ.App.1998).[1]
A train is a machine made by human hands, and it more closely resembles a pickup truck or an air rifle than it does a natural condition such as a ravine or a tree. This Court held in Copeland v. Pike Liberal Arts School, 553 So.2d 100, 103 (Ala.1989), that a ravine was a natural condition and that the landowner in the case owed a trespassing child only the conventional duty of care. In concluding that § 339 did not apply, we noted that “[t]he ravine was not created by any action of the defendants, but, instead, was a natural condition of the land.” 553 So.2d at 102. Also, in Mullins v. Pannell, 289 Ala. 252, 255, 266 So.2d 862, 864 (1972), this Court held that “[njatural objects, such as a tree, are not regarded as constituting an attractive nuisance.” Thus, the defendant owed only the conventional duty of care to a child trespasser who fell from his tree. The fact that there was various artificial debris, such as planks and boards, under the tree did not affect the natural character of the tree. Id. The law of other jurisdictions also supports our determination that a train is an artificial condition. *930 See Klein v. National R.R. Passenger Corp. (No. Civ.A.04-955, March 31, 2006) (E.D.Pa.2006) (not reported in F.Supp.2d) (“In this case, the laddered freight car was an artificial condition upon the land that allowed the 21' high catenary wires to become dangerous.”); Thunder Hawk v. Union Pacific R.R., 844 P.2d 1045, 1051 (Wyo.1992) (reversing a summary judgment for a railroad where a child was injured when he jumped from a stopped train).
We decline to hold that a train is a natural condition upon the land. Thus, we apply the duty of care owed for artificial conditions as delineated by § 339.

B. The § SS9 Elements

Having held that the duty of care set out in Restatement § 339, rather than the conventional duty of care, applies in this case, we turn to the elements of the Restatement test. Because Laster has the burden at trial of establishing all the elements of § 339, Norfolk Southern need only demonstrate that there was no genuine issue of material fact regarding one of the five elements in order for a summary judgment to be proper. Motes v. Matthews, 497 So.2d at 1123; see also Copeland v. Samford Univ., 686 So.2d 190, 191 (Ala.1996) (“ ‘Once the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden of going forward with evidence shifts to the nonmovant — who must demonstrate the existence of a genuine issue of material fact.’” (quoting Diamond v. Aronov, 621 So.2d 263, 265 (Ala.1993), citing Grider v. Grider, 555 So.2d 104 (Ala.1989))).
1. James’s Appreciation of Danger
Norfolk Southern argues that there is no genuine issue of fact with regard to element § 339(c), which deals with the child’s appreciation of the danger of the instrumentality. We agree.
The record supports a finding that James understood the risk involved in walking on the railroad right-of-way and that he appreciated the danger posed by a stopped train. James testified that he knew that trains were dangerous and that his parents had repeatedly warned him not to walk on the railroad tracks without an adult. He stated that he had heard of a man who “got killed by, run over by a train.” After the train came to a stop, James and Raymond turned around and walked back toward James’s house. James testified: “We didn’t want to get to the front of the train, like if it just started back and stuff. That would be kind of scary.” When Norfolk Southern’s attorney asked James if he turned around “because you knew if the train came to a stop there, it would probably start back up at some point?” James replied, “Yes, sir.” Finally, James was aware, immediately before the accident, that the train was ready to move because, he testified, he heard the “whooshing” sound of the train’s air brakes being released, and he was familiar enough with that sound to associate it with a train starting to move.
Norfolk Southern produced sufficient evidence indicating that James appreciated the danger of approaching the stopped train and that, therefore, he could not satisfy element (c) of § 339.[2] See *931 Dennis v. Northcutt, 923 So.2d 275, 281 (Ala.2005) (“ ‘ “If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56[, Ala. R. Civ. P.,] burden of production either by submitting affirmative evidence that negates an essential element in the nonmovant’s claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant’s evidence is insufficient to establish an essential element of the non-movant’s claim Norfolk Southern has thus met its burden of establishing that summary judgment was appropriate in this case.
In order to defeat a properly supported summary-judgment motion, Laster must present “substantial evidence” creating a genuine issue of material fact. Dennis, 923 So.2d at 280. Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life, 547 So.2d at 871. Laster, however, put forward no evidence indicating that James did not appreciate the danger of approaching the train after it had stopped. Indeed, Laster states in his brief that the accident occurred as James was attempting to leave the area of the train out of respect for the danger it posed. Laster’s brief at 36. The evidence suggests that James understood that trains are dangerous. He understood that the train could begin to move again at anytime, yet he attempted to pull his friend from the train.
In Hollis v. Norfolk Southern Ry., 667 So.2d 727 (Ala.1995), this Court discussed whether § 339(c) applied to a 16-year-old who was injured as he walked along the edge of a man-made cliff at night. The Court, discussing whether the teenager appreciated the danger of this course of action, stated that “a landowner is not subject to liability when a child knows of a danger and appreciates the risk involved, but chooses to go forward and to encounter the danger out of ‘recklessness or bravado.’ ” Hollis, 667 So.2d at 732 (quoting Restatement (Second) Torts § 339 cmt. m.). Here, although James’s motive in trying to help his friend is commendable, he appreciated the danger posed by the train and nonetheless approached the train.
Laster argues that, given the stress of the emergency situation created when the train began to move, the boys should not be held to the same correctness of judgment and ability to recognize danger to which a child would be held in normal circumstances. See Interstate Eng’g, Inc. v. Burnette, 474 So.2d 624, 628 (Ala.1985) (“ ‘[I]f a person without fault of his own is faced with a sudden emergency, he is not to be held to the same correctness of judgment or actions as if he had time to fully consider the situation .... ’ ”). However, Laster presents no evidence indicating that James did not appreciate the danger of the situation, notwithstanding the stress of the moment.
2. The Rescue Doctrine
Laster argues that even if this Court holds that James appreciated the danger of a stopped train so as to preclude recovery under § 339 in James’s own right, Laster may still be able to recover if § 339 applies to Raymond, James’s nine-year-old companion. Because James attempted to come to Raymond’s rescue, Laster argues, the “rescue doctrine” applies. This Court has recognized *932 the rescue doctrine as an exception to the doctrines of assumption of the risk and contributory negligence. Seaboard Air Line Ry. v. Johnson, 217 Ala. 251, 254, 115 So. 168, 170 (1927). The rescue doctrine operates to close a gap in the chain of causation. As we recognized in Dillard v. Pittway Corp., 719 So.2d 188, 193 (Ala.1998),
“[essentially, the rescue doctrine provides that it is always foreseeable that someone may attempt to rescue a person who has been placed in a dangerous position and that the rescuer may incur injuries in doing so. Thus, if the defendant has acted negligently toward the person being rescued, he has acted negligently toward the rescuer.”
The rescue doctrine thus provides a mechanism by which a plaintiff can establish the element of causation in a negligence claim. See Lowery v. Illinois Cent. Gulf R.R., 891 F.2d 1187, 1194 (5th Cir.1990) (“We note that the rescue doctrine is nothing more than a negligence doctrine addressing the problem of proximate causation.”).
This Court has never decided whether the rescue doctrine applies to allow a plaintiff who otherwise appreciated the danger of an instrumentality nonetheless to recover under § 339 on the theory that the individual being rescued did not. However, we have recognized the rescue doctrine in cases where a rescuer otherwise would have been barred from recovering damages by the doctrine of assumption of the risk. Dillard, 719 So.2d at 193. Assumption of the risk and appreciation of danger are analogous concepts, and Norfolk Southern has not put forward any reason why the rescue doctrine should not apply in this case. Further, courts in other jurisdictions have applied the rescue doctrine to cases falling within § 339. See Bennett v. Stanley, 92 Ohio St.3d 35, 43, 748 N.E.2d 41, 48-49 (2001) (“While the attractive nuisance doctrine is not ordinarily applicable to adults, it ‘may be successfully invoked by an adult seeking damages for his or her own injury if the injury was suffered in an attempt to rescue a child from a danger created by the defendant’s negligence.’ ”); Luck v. Baltimore & Ohio R.R., 510 F.2d 663, 667 (D.C.Cir.1974) (applying the rescue doctrine in an attractive-nuisance case).
Absent the rescue doctrine, Laster cannot show that Norfolk Southern’s negligence caused James’s injuries. See Reeves v. North Broward Hosp. Dist., 821 So.2d 319, 321 (Fla.Dist.Ct.App.2002) (“The basic precept of the ‘rescue doctrine’ is that the person who has created a situation of peril for another will be held in law to have caused peril not only to the victim, but also to his rescuer, and thereby to have caused any injury suffered by the rescuer in the rescue attempt.”). Under the rescue doctrine, if James was injured in an attempt to rescue Raymond from Norfolk Southern’s negligence, he could recover if Raymond, among other things, belonged to the class of children protected by § 339.
We have not previously addressed which party bears the burden of proving whether the child the plaintiff attempted to rescue belonged to the class of children protected under § 339. However, we have already noted that Laster has the burden at trial of establishing all the elements of § 339, and caselaw from Alabama and other jurisdictions leads us to conclude that Laster bore the burden of coming forward with evidence supporting the application of the rescue doctrine.
In Trapp v. Vess, 847 So.2d 304, 307 (Ala.2002), a summary-judgment case, this Court confronted the issue of “when a person qualifies as a rescuer under the rescue doctrine.” In Trapp, Vess and his daughter were traveling in a car on icy roads when the car slid on the ice and *933 skidded into a ditch. Neither Vess nor his daughter was hurt. The plaintiff, Trapp, stopped to help, and Vess told him that the accident occurred as he was taking his daughter to the hospital for medical tests. Trapp and others helped remove the car from the ditch, but, in doing so, Trapp injured his arm. Trapp sued Vess, asserting, among other theories, the rescue doctrine. This Court held that, “[i]n order to claim the status of a rescuer, a party must establish that he had a reasonable belief that the person he was trying to rescue was in a dangerous position.” Trapp, 847 So.2d at 307. We also noted that the person being rescued does not need to be in actual peril so long as the rescuer has “ ‘ “a reasonable belief that some person is in imminent peril.” ’ ” Trapp, 847 So.2d at 307 (quoting Ellmaker v. Goodyear Tire & Rubber Co., 372 S.W.2d 650, 658 (Mo.Ct.App.1963)). Nonetheless, we concluded:
“[T]he only fact that could have led Trapp to a ‘reasonable belief that some person [was] in imminent peril’ is Trapp’s statement in his affidavit indicating that Vess told Trapp that he needed to get his daughter to the hospital to have medical tests performed. However, there is absolutely no other evidence that Vess indicated that he and his daughter were in peril or that he requested Trapp’s assistance.”
Trapp, 847 So.2d at 307 (footnote omitted). We thus affirmed the summary judgment in favor of Vess because “Trapp did not present sufficient evidence to create a genuine issue of material fact as to whether Trapp was a rescuer under the rescue doctrine.” 847 So.2d at 307. Thus, Trapp bore the risk of failing to produce evidence regarding an element of the rescue doctrine.
Caselaw from other jurisdictions also suggests that the party claiming rescuer status bears the burden of establishing each of the elements of the rescue doctrine, including the defendant’s negligence. In McCoy v. American Suzuki Motor Corp., 136 Wash.2d 350, 355-56, 961 P.2d 952, 956 (1998), the Supreme Court of Washington held:
“To achieve rescuer status one must demonstrate: (1) the defendant was negligent to the person rescued and such negligence caused the peril or appearance of peril to the person rescued; (2) the peril or appearance of peril was imminent; (3) a reasonably prudent person would have concluded such peril or appearance of peril existed; and (4) the rescuer acted with reasonable care in effectuating the rescue.”
That is, the one asserting the rescue doctrine must prove each of the elements of it. Thus, “in order for the rescue doctrine to be applicable, the party relying upon it must establish that some negligent act of someone created the peril with respect to which the rescue attempt was undertaken.” Dubus v. Dresser Indus., 649 P.2d 198, 206 (Wyo.1982). See also Lowery, 891 F.2d at 1193-94 (“Therefore, in order for Lowery to recover under Mississippi’s rescue doctrine, Lowery must show: (1) The condition of the locked hand brake on the car resulted from defendant’s negligence; (2) this negligence exposed the employer’s property and unidentified third parties to danger; and (3) this emergency situation led to Lowery’s rescue attempt and proximately caused his injuries.”); Ashwood v. Clark County, 113 Nev. 80, 85, 930 P.2d 740, 743 n. 1 (1997) (“In order for [the rescue] doctrine to apply, the defendants must first be liable for the injury to the victim being rescued.”); Brazier v. Phoenix Group Mgmt., 280 Ga.App. 67, 72, 633 S.E.2d 354, 358 (2006) (“In order to hold a defendant liable for the death of a rescuer, ... a plaintiff must show that the defendant’s negligence placed himself or anoth *934 er person in imminent distress, thereby requiring the rescue and making injury to the rescuer a foreseeable possibility”).
The case of Blackburn v. Broad Street Baptist Church, 305 N.J.Super. 541, 702 A.2d 1331 (1997), appears to be directly on point. In Blackburn, the plaintiff was injured when she slipped and fell while attempting to remove a three-year-old child from a “puddle-like pond” that had accumulated on property belonging. to the church. The trial judge entered a summary judgment for the church after concluding that the plaintiff was not a rescuer but a trespasser to whom no duty was owed. The appellate division reversed. That court analyzed the case from the perspective of the infant trespasser, holding that if the danger to the child was created by an attractive nuisance, the “defendant may be liable ... because the intervention of a rescuer is reasonably foreseeable.” Blackburn, 305 N.J.Super. at 546, 702 A.2d at 1334. In determining whether the rescue doctrine applied, the court examined whether the plaintiff had presented sufficient evidence to establish each element of the attractive-nuisance doctrine, holding that “[the] plaintiff must establish each of the five elements under [Restatement (Second) Torts ] § 339 to prove a prima facie case.” Blackburn, 305 N.J.Super. at 547, 702 A.2d at 1334. Because there was sufficient evidence in the record to establish that the church had maintained an attractive nuisance on its property, the court allowed the case to go forward.
The burden rests on the plaintiff to establish all the elements of the rescue doctrine, which include, in the case before us, showing that § 339 applies to Raymond. For Laster’s claim to survive Norfolk Southern’s summary-judgment motion, he must have put forward substantial evidence indicating that Norfolk Southern owed a duty to Raymond and that Norfolk Southern’s breach of that duty created the need for James to attempt to rescue Raymond. For Norfolk Southern to have owed a duty to Raymond, Raymond must have been within the class of children, as identified by § 339(c), the Restatement protects. See Ricketts v. Norfolk Southern Ry., 686 So.2d at 1105 (“ ‘In adopting § 339, this Court recognized the special duty owing to a class of plaintiffs, defined in § 339(c), whose natural proclivity for wonder and adventure exceeds their sense of impending danger.’ ” (quoting Henderson v. Alabama Power Co., 627 So.2d 878, 881 (Ala.1993))). The protections of § 339 are not unlimited; under § 339, a possessor of land owes a duty of reasonable care to protect a child from a dangerous condition on the land if it is foreseeable that children will trespass and the possessor should know that the condition poses an unreasonable risk of harm, outweighing the usefulness of the condition, that trespassing children could not be expected to appreciate and avoid.[3] Re *935 statement (Second) Torts § 339. However, Laster, who asserts the rescue doctrine in order to establish Norfolk Southern’s negligence, has failed to demonstrate that its application allows him to recover.
A summary judgment is appropriate when “it appears from the combined evi-dentiary showings before the court at the hearing that there is no genuine issue of fact to be resolved.” Jerome A. Hoffman, Alabama Civil Procedure § 10.3 (2d ed.2001). Rule 56(c)(3), Ala. R. Civ. P., states:
“[A summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
Thus, if the record does not demonstrate a genuine issue of material fact regarding Raymond’s appreciation of the danger of playing on a stopped train, then the summary judgment was appropriate.
There is little evidence in the record regarding Raymond and his appreciation of danger. Neither party deposed Raymond or had him execute an affidavit. As Laster himself admits, “[i]t is unknown whether nine year old Raymond had any realization of any risk involved with climbing on the ladder of the parked rail car, in that no testimony of Raymond was presented to the trial court.” Laster’s brief at 16. “Such an explicit admission in a brief is binding on the party making it.” Ford v. Carylon Corp., 937 So.2d 491, 502 (Ala.2006). The only evidence regarding Raymond’s awareness of the danger of a temporarily stopped train is the fact that Raymond was nine years old at the time of the accident.
This Court has recognized that age is a factor in deciding whether a child can appreciate a hazard on another’s property. Lyle v. Bouler, 547 So.2d at 508. The Court in Lyle set forth a nonexhaustive list of factors that “merit examination”:
“(1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child’s actual knowledge of the danger; (4) the child’s ability to exercise discretion; (5) the education level of the child; (6) the maturity of the child; and (7) the age of the child.”
547 So.2d at 508.[4] Laster could have attempted to meet his burden of showing that Raymond did not appreciate the danger of climbing onto a railroad car by putting forward evidence based on some or all the listed factors. The Court in Lyle did not state that any factor — age included — was sufficient, by itself, to meet that burden. Laster did not present any evidence as to any factor other than age.
Laster states, instead, that he relies on “the presumption of no negligence (appre *936 ciation of danger)” as establishing a genuine issue of material fact. However, our caselaw does not recognize any such presumption in this context.
The dissent states that “[a] child between the ages of 7 and 14 is prima facie incapable of contributory negligence,” 18 So.3d at 942, and argues that this presumption should apply in determining James’s and Raymond’s appreciation of the danger in this case. However, this Court established in Lyle that, in § 339 cases, determining appreciation of the danger depends on a factor-based analysis. 547 So.2d at 508 (“[T]his Court now embraces § 339 as the only authority for determining whether a child may recover.... Age may be an important factor in determining liability, but it is one of many factors that must be examined. Elements that merit examination are: (1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child’s actual knowledge of the danger; (4) the child’s ability to exercise discretion; (5) the education level of the child; (6) the maturity of the child; and (7) the age of the child.”). The dissent points to these factors from Lyle but concludes: “Thus, the respective ages of James and Raymond constituted substantial evidence that each of them was incapable of appreciating the risk at issue in this case in the same manner as an adult, thereby creating a genuine issue of material fact and making the summary judgment inappropriate.” 13 So.3d at 940. However, our decision in Lyle emphasizes that “[a]ge may be an important factor in determining liability, but it is one of many factors that must be examined.” There is no indication in Lyle that age, or any other factor, is, by itself, dispositive or, as applied in this case, that any one factor, by itself, constitutes substantial evidence of a child’s appreciation of the danger under § 339. We decline to adopt that reading of Lyle in this case.
Moreover, as noted previously, Laster did not argue on original submission that the so-called tender-years doctrine should apply in the § 339 context. He mentioned the age-based presumption in support of his argument that James could not be contributorily negligent, but it was not until his. application for a rehearing that he implied that the presumption ought to apply to the determination of James’s or Raymond’s appreciation of the danger in this case. Therefore, we need not address this argument. See Stover v. Alabama Farm, Bureau Ins. Co., 467 So.2d 251 (Ala.1985).
James testified that Raymond continued to climb on the railroad car, notwithstanding James’s warning that the train would start moving soon. “[A] landowner is not subject to liability when a child knows of a danger and appreciates the risk involved, but chooses to go forward and to encounter the danger out of ‘recklessness or bravado.’ ” Hollis, 667 So.2d at 732 (quoting Restatement (Second) Torts § 339 cmt. m.). “Section 339(c) is very specific with regard to the lack of knowledge that must be proven before a landowner will be held liable for injuries to a child trespasser caused by an artificial condition.” Hollis, 667 So.2d at 731. Given the lack of evidence in the record indicating whether Raymond appreciated the danger involved in climbing on the train car,[5] we cannot conclude that the summary *937 judgment entered in this case was erroneous.
Because discovery had been completed, Norfolk Southern’s burden under Rule 56 could be met by demonstrating to the trial court that Laster’s evidence was insufficient to establish an essential element of his claim. Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala.1999) (“[A] moving party ‘need not prove a negative in order to prevail on a motion for a summary judgment.’ ” (quoting Lawson State Cmty. Coll. v. First Cont’l Leasing Corp., 529 So.2d 926, 935 (Ala.1988))). Laster then could have “ ‘defeated] a motion for summary judgment ... by directing the trial court’s attention to evidence of that essential element already in the record, that was ignored or overlooked by [Norfolk Southern], or [could] submit an affidavit requesting additional time for discovery ....’” Id. (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)).[6] However, Laster did not provide any additional evidence regarding Raymond’s appreciation of danger, and a summary judgment was proper as to Last-er’s negligence claim founded on the rescue doctrine.[7] See Rule 56(e), Ala. R. Civ. P. (stating that a party “may not rest on mere allegations or denials of the adverse party’s pleading, but the adverse party’s response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial”); Ronald L. Carlson, Successful Techniques for Civil Trials § 8:26 (2d ed. 1992) (“The mere possibility that a fact issue may exist is not enough to defeat summary judgment, and the litigant opposing summary judgment may not rest upon mere conclusory allegations or denials as a vehicle for obtaining trial.”). For these reasons, we cannot hold that the trial court erred in entering a summary judgment for Norfolk Southern on the basis that James was injured during an attempt to rescue his friend.[8]

*938
TV. Conclusion

Laster has failed to meet his burden of producing substantial evidence showing that James did not appreciate the danger of approaching a stopped train so that a summary judgment would be improper. Also, Laster has failed to produce substantial evidence indicating that Raymond did not appreciate the danger of climbing on a stopped train; thus, Laster is unable to demonstrate that the rescue doctrine would allow him to recover for James’s injuries on the basis of Norfolk Southern’s breach of a duty of care owed to Raymond. Therefore, the trial court did not err in entering a summary judgment for Norfolk Southern.
APPLICATION OVERRULED; OPINION OF JANUARY 5, 2007, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
COBB, C.J., and MURDOCK, J., dissent.

. In other cases, this Court engaged in the § 339 analysis while specifically declining to decide whether there was an "artificial condition” on the land. See Hollis v. Norfolk Southern Ry., 667 So.2d 727, 731 (Ala.1995) (a man-made cliff that closely resembled a natural cliff); Gentle v. Pine Valley Apartments, 631 So.2d 928, 936 n. 3 (Ala.1994) (a dog).

. The dissent states that "[a] child between the ages of 7 and 14 is prima facie incapable of contributory negligence,” 13 So.3d at 942, and argues that this presumption should apply to the determination of James's and Raymond’s appreciation of the danger in this case. However, as discussed in note 4, infra, this Court has not recognized such a presumption in the context of § 339. Moreover, Laster did not argue that the presumption allegedly recognized in contributory-negligence cases should be applied in this context *931 until his application for a rehearing, and then only implicitly. "New supporting arguments presented for the first time on rehearing generally will not be considered.” Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251, 253 (Ala.1985).

. Comment i. to Restatement § 339 explains:
"The duty of the possessor, therefore, is only to exercise reasonable care to keep the part of the land upon which he should recognize the likelihood of children's trespassing free from those conditions which, though observable by adults, are likely not to be observed by children, or which contain the risks the full extent of which an adult would realize but which are beyond the imperfect realization of children. It does not extend to those conditions the exis-tenes of which is obvious even to children and the risk of which should be fully realized by them.”
See also 1 Dan B. Dobbs, The Law of Torts § 236, at 609 (2001) ("If the landowner ... could foresee that children might enter and be harmed because, given their age and experience, they might fail to appreciate the danger, and if the landowner could have avoided such serious risks with a relatively small expense, courts today generally recognize a duty of care to the child and liability for negli *935 gence.”); 5 Fowler B. Harper et al., Harper, James and Gray Torts § 27.5, at 186 (3d ed.2008) (“The requirements of the more modern Restatement view that the plaintiff must satisfy center on unreasonable probability of harm.”).

. Lyle overruled Central of Georgia R.R. v. Robins, 209 Ala. 6, 7, 95 So. 367, 368 (1923). See Lyle, 547 So.2d at 508 ("By rejecting the age limitation imposed in Central of Georgia, this Court now embraces § 339 as the only authority for determining whether a child may recover. This is not to say that age should not be a factor at all. The comment to § 339 clearly states that recovery will be less likely as the age of the child increases. Age may be an important factor in determining liability, but it is one of many factors that must be examined.... Central of Georgia, and those cases relying on that case, are hereby overruled to the extent that they are inconsistent with our holding today .... ”).

. There is scant testimony as to Raymond's state of mind, but James's testimony suggests some awareness of danger:
"Q. Now, then you said something about, I think, you heard a train coming?
*937 "A. So we said — it was like coming, so we were like — we got scared. So we just came back.”
James also explained why he and Raymond decided to turn around and walk away from the front of the train. He testified: “We didn’t want to get to the front of the train, like if it just started back and stuff. That would be kind of scary.”

. Instead, on original submission and in his application for a rehearing, Laster has assumed, incorrectly, that only by Norfolk Southern’s putting forward affirmative evidence that Raymond did appreciate the danger posed by the train could Norfolk Southern establish a prima facie case that it was entitled to a summary judgment.

. The dissent also argues that this case is analogous to Ricketts v. Norfolk Southern Ry., supra. However, the Court in Ricketts noted that, in addition to the injured child’s age,
"Eric’s mother testified that Eric [the injured child] was an average 14-year-old boy who made average grades and who at the time of his injury had just begun the 9th grade. Eric's mother described him as ’all boy’ who 'did what he had to do to get by.' There is no evidence that Eric knew that anyone had ever been injured from being on the trestle. In fact, there was evidence that he knew that persons had ridden across the trestle with apparent impunity. There was testimony that Eric knew that an uncle of his had ridden a motorcycle across the trestle.”
686 So.2d at 1104.

.Laster argues that if the trial court entered a summary judgment based on Norfolk Southern’s argument that James was contributorily negligent, then the judgment should be reversed. However, because we hold that Norfolk Southern breached no duty owed to James or to Raymond, we may affirm the trial court’s judgment on that ground, and we need not address Laster’s contributory-negligence argument. See Premiere Chevrolet, Inc. v. Headrick, 748 So.2d 891, 893 (Ala.1999) ("The appellate courts will affirm the ruling of the trial court if it is right for any reason, even one not presented to or considered by the trial judge.”); Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988) ("An ap- *938 pellee can defend the trial court's ruling with an argument not raised below, for this Court 'will affirm the judgment appealed from if supported on any valid legal ground.’ ” (quoting Tucker v. Nichols, 431 So.2d 1263, 1265 (Ala.1983))).